William W. Scriver et al., Respondents, *v.* Eli B. Smith, Appellant.

Where there is an outstanding title to an easement, in premises conveyed with covenant of quiet enjoyment, which materially impairs the value of the premises and interferes with the use and possession of some portion thereof, the covenant is broken although there is no technical physical ouster.

The right which the owner of land through which a natural stream of water flows, to have it flow from his land unobstructed, although having many of the incidents of an easement in the land below, is not in fact such ; it is a corporeal, not an incorporeal, right; it is a natural right, not dependent upon prescription or grant — an incident of property in, and parcel of the land.

Where, therefore, the owner of land upon a stream conveys the same with covenant of quiet enjoyment, and subsequently an owner below under and by virtue of a paramount right raises the height of a dam upon his land and thereby floods the land conveyed, this is substantially an eviction and a breach of the covenant.

*Green* v. *Collins* (86 N. Y. 246), distinguished.

(Argued October 21, 1885 ; decided November 24, 1885.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 3, 1883, which affirmed a judgment in favor of plaintiffs entered upon an order overruling a demurerer to plaintiffs' complaint. (Reported below, 30 Hun, 129.)

This action was brought to recover damages for an alleged breach of covenant for quiet enjoyment contained in a deed.

The material facts are set forth in the opinion.

*W. P. Cantwell* for appellant. To constitute a breach of this covenant of quiet enjoyment there must be an eviction or ouster from the possession of the whole or a part of the premises. (*Greenby* v. *Wilcocks*, 2 Johns. 1; *Kent* v. *Welch*, 7 id. 258 ; *Blydenburg* v. *Cotheal*, 1 Duer, 176 ; Cruise, 378, note ; 2 Greenl. Ev. 460; *Rindskopf* v. *F. L. & T. Co.*, 58 Barb. 50 ; *Emerson* v. *Prop'rs, Etc.*, 1 Mass. 464; *Marston* v. *Hobbs*, 2 id. 437 ; *Kelly* v. *Dutch Church*, 2 Hill, 105; 4 Kent's Com.

471; *Wood* v. *Forncrook*, 3 T. & C. 303; *Parkinson* v. *Sherman*, 74 N. Y. 93; *Sweetman* v. *Prince*, 26 id. 233.) An eviction is "an actual dispossession, under a lawful claim by a paramount title." (*Kent* v. *Welch*, 7 Johns. 258; *Fowler* v. *Poling*, 6 Barb. 165; *Miller* v. *Watson*, 5 Cow. 194; *Talliard* v. *Wallace*, 2 Johns. 395.) An ouster is an actual deprivation of the possession of a part of the land, or what is equivalent, a title which is capable of being used to deprive the grantee of his possession of a portion of the land covered by his deed. (*McMullin* v. *Wooley*, 2 Lans. 395.) Enforcing an easement upon the property is not an eviction. (*Whitbeck* v. *Cook*, 15 Johns. 484; *Mitchell* v. *Warner*, 5 Conn. 407; *McMullin* v. *Wooley*, 2 Lans. 393; Rawle on Covenants of Title, 114, 115; 4 Kent's Com. 471, note; 1 Duer, 196, 197; Willard on Real Estate, 414; 1 Pars. on Cont. 110, 190, 200, note *r*; *Firrel* v. *Alder*, Humph. 44; U. S. Ann. Dig. 1849, 122, No. 73.) The paramount character of Douglass' title is not shown by his judgment, the defendant not having been a party or privy to it. (*Cowdrey* v. *Coit*, 44 N. Y. 382; Abb. Trial Ev. 519.) Under the general word "appurtenances," nothing is included that is not actually and legally appurtenant to the land, and nothing that the grantor does not own or has not a right to convey. (*Green* v. *Collins*, 86 N. Y. 246; 26 Hun, 477; *Philbrick* v. *Ewing*, 97 Mass. 133.) The covenant, therefore, extends only to the land granted, and to those things which, as matter of legal right, belong to and pass with it. (2 Washb. on Real Prop. 655, 607; *Burke* v. *Nichols*, 2 Keyes, 670.) The owner of a water-mill has an easement in the land below, for the free passage of the water from the mill, in the natural channel of the stream, accompanied with a right to enter upon the land for the purpose of clearing out the stream and removing obstructions to the free flow of the water. (Angell on Water-Courses, note 3 to § 337; *Prescott* v. *Williams*, 5 Metc. 429; *Cary* v. *Daniels*, id. 236; 4 U. S. Dig. [supplement], 604, Nos. 30, 34; *Adams* v. *Conover*, 87 N. Y. 422.) Mere limitations or restrictions upon the use of the land are not evictions. The title remains in the grantee, and the pos-

session.  The easement may be a great incumbrance.  But a covenant of warranty is not a covenant against incumbrances. And a covenant of quiet enjoyment is practically the same as a covenant of warranty.  (*Boreel* v. *Lawton*, 90 N. Y. 296; Rawle on Covenants of Title, 144; *Whitbeck* v. *Cook*, 15 Johns. 483.)  Since the burden of proof is upon plaintiffs to show ignorance of the nature and extent of Douglass' rights when they purchased, as against the presumption of knowledge on their part an averment of ignorance is material and without it the complaint is defective.  (*Bennett* v. *Buchan*, 76 N. Y. 386; *Hymes* v. *Esty*, 36 Hun, 147; *Williamson* v. *Brown*, 15 N. Y. 354; *Reed* v. *Gannon*, 50 id. 345; *Pendleton* v. *Gray*, 2 Paige, 202; *Hawley* v. *Cramer*, 4 Cow. 717; *Baker* v. *Bliss*, 39 N. Y. 70; *Brown* v. *Volkening*, 64 id. 76; *Kellogg* v. *Smith*, 26 id. 318; *Youngs* v. *Wilson*, 27 id. 351; *Sigourney* v. *Mann*, 7 Conn. 324; Abbott's Trial Ev. 520, under Covenants for Title, citing *Spoor* v. *Green*, L. R., 9 Ex. 99; 8 Moak's Eng. Rep. 540; *Oldfield* v. *Round*, 5 Ves. 508; Dart on Vend. and Purch. 369.)  Parol evidence of existing defects may be given to limit the extent of a covenant.  (*Bennett* v. *Buchan*, 76 N. Y. 391; *Jennings* v. *Chenango Co. Mut. Ins. Co.*, 2 Den. 75; *Bidwell* v. *N. W. Ins. Co.*, 24 N. Y. 302; *Van Schaick* v. *N. F. Ins. Co.*, 68 id. 434.)  Such evidence is not admissible to extend the terms of the covenant.  (*Green* v. *Collins*, 86 N. Y. 254; *McMullin* v. *Wooley*, 2 Lans. 395; *Manning* v. *Smith*, 6 Conn. 289; *Gayetty* v. *Bethune*, 14 Mass. 49; *Plant* v. *James*, 5 Barn. & Ad. 791.)  If a man buys land which is covered with water, the water is not necessarily even an incumbrance, in the legal sense of the word; and it is not a breach of a genuine covenant against incumbrances, that, prior to the conveyance, the grantor himself had lawfully erected a dam and thereby caused water to flow upon the granted premises. (*Kidder* v. *George*, 18 N. H. 511; *Kurtz* v. *McCune*, 22 Wis. 628; *Alexander* v. *Kerr*, 2 Rawle, 83; *Knapp* v. *White*, 23 Conn. 529; *Stetson* v. *Veazie*, 11 Me. 408.)  A lease, with its covenants, rights, privileges and obligations, extends only to the premises demised, and does not apply to other

property, whether adjoining or not. (*Johnson* v. *Oppenheim*, 55 N. Y. 280; *White* v. *Mealio*, 37 N. Y. Super. 72; *Howard* v. *Doolittle*, 3 Duer, 464; *Sherwood* v. *Seaman*, 2 Bosw. 127; *Myers* v. *Gemmel*, 10 Barb. 537; *Palmer* v. *Wetmore*, 2 Sandf. 316; *Kramer* v. *Cook*, 7 Gray, 550; *Williams* v. *Hayward*, 1 El. & El. 1040; *Kurtz* v. *McCune*, 22 Wis. 627; *Sabine* v. *Johnson*, 35 id. 185; *Smith* v. *Hughes*, 50 id. 620.)

*Edward C. James* for respondents. Upon a conveyance of land, whatever is in use for it, as an incident or appurtenance, passes with it, whether the words " with the appurtenances " are used or omitted. (*Huttemier* v. *Albro*, 18 N. Y. 48; *Comstock* v. *Johnson*, 46 id. 620; *Voorhees* v. *Burchard*, 55 id. 102; *Simmons* v. *Cloonan*, 81 id. 557; *Green* v. *Collins*, 86 id. 253; *Adams* v. *Conover*, 87 id. 422; *Corning* v. *T. I. & N. Factory*, 40 id. 191; *Brown* v. *Bowen*, 30 id. 519; *Pixley* v. *Clark*, 35 id. 521; *Stout* v. *Adams*, 2 Scam. [Ill.] 67.) The covenants in a deed are designed to protect the grantee in the enjoyment of his property, in the manner and for the particular purpose intended by the parties at the time of executing the deed. (*Adams* v. *Conover*, 87 N. Y. 428; *Comstock* v. *Johnson*, 46 id. 615; *Voorhees* v. *Burchard*, 55 id. 102; *Green* v. *Collins*, 86 id. 246; Rawle on Covenants for Title [4th ed.], 181; *Peters* v. *Grubb*, 21 Penn. St. 455; *Wilson* v. *Cochrane*, 46 id. 229.) Considering plaintiff's purchase simply as the purchase of a lot of land, it is plain that the exercise of a paramount outstanding right in a third person, to use the said land, or any part of it, for the bed of a mill pond, and to cover it permanently with the waters of a river, accumulated and held by means of a mill-dam situate on the adjoining lot below, is an eviction *pro tanto*. (*Shattuck* v. *Lamb*, 65 N. Y. 503; *Rea* v. *Minkler*, 5 Lans. 196; *Adams* v. *Conover*, 87 N. Y. 422; *Russ* v. *Steele*, 40 Vt. 310; *Clark* v. *Conroe*, 38 id. 496; *Lamb* v. *Danforth*, 59 Me. 322; 1 Bouv. Law Dict. 543; *Pumpelly* v. *G. B. Co.*, 13 Wall. 166; *Eaton* v. *B. C. & M. R. R. Co.*, 51 N. H. 185; *G. R. B. Co.* v. *Jarvis*, 30 Mich. 321; *Hooker* v. *N. H. & N. Co.*, 14 Conn. 146; *Rowe* v. *G. B.*

*Corp.*, 21 Pick. 344 ; *Nevins* v. *Peoria*, 41 Ill. 502 ; Cooley's Const. Lim. 542, 545 ; *Canal Comrs.* v. *People*, 5 Wend. 452 ; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122 ; *Matter of N. Y. El. R. R. Co.*, 36 Hun, 17.) Any interference by an adjoining owner on the stream, whether above or below, under paramount title, whereby the plaintiffs were permanently deprived of the head of water upon their own premises, as it then existed, is a breach of such covenant and an eviction *pro tanto*. (*Adams* v. *Conover*, 87 N. Y. 422 ; *Rea* v. *Minkler*, 5 Lans. 196 ; *Shattuck* v. *Lamb*, 65 id. 510.) On demurrer all reasonable intendments will be indulged in in support of the pleading demurred to. (*Lorrillard* v. *Clyde*, 86 N. Y. 384.) A covenant, under seal, cannot be discharged by a parol agreement before breach. A deed cannot be contradicted in its terms, or legal effect, by parol evidence. (*Suydam* v. *Jones*, 10 Wend. 180 ; *Mott* v. *Palmer*, 1 N. Y. 564 ; *Hubbard* v. *Norton*, 10 Conn. 422 ; *Sargent* v. *Getterson*, 13 N. H. 273 ; *Lloyd* v. *Quimby*, 5 Ohio, 165 ; *Taylor* v. *Gillman*, 25 Vt. 413.)

EARL, J. On the 25th day of March, 1875, the defendant conveyed to the plaintiffs a parcel of land situate in Franklin county, described in the deed as follows : " Commencing at a point forty rods south and forty rods east from the north-west corner of said lot No. 44, in the east line of a forty-acre lot formerly owned by Philip Bryant, and at the south-west corner of land formerely owned by George W. Douglass, running from thence south in the east line of the Bryant lot to the land leased or owned by the Northern Railroad Company ; thence east in the north line of said railroad to the west bounds of land formerly owned by John Mitchell and now owned by Henry Mitchell ; thence northerly in said Mitchell's line to the bridge or highway ; thence westerly in the center of the highway until it strikes the line dividing the land of C. J. Morgan from that of the party of the first part ; thence westerly along said line to the place of beginning, being all of the land owned by the party of the first part south of the highway and up to the north line of the railroad, excepting and reserving the old

house now standing on said land in the sand bank west of the river, with the appurtenances, and all the estate, title and interest therein of the said parties of the first part." The deed contained a covenant in the following language : " And the said Eli B. Smith does hereby covenant and agree to and with the said parties of the second part, their heirs and assigns, that the premises thus conveyed in the quite and peaceable possession of the said parties of the second part, their heirs and assigns, he will forever warrant and defend against any party whomsoever lawfully claiming the same or any part thereof." It is alleged in the complaint that the parcel of land described contained a grist and flouring-mill with the water power and mill privileges appurtenant ; that it was known as the John Bush Grist and Flouring-Mill property and had been used in connection with the water power afforded by the river mentioned in the deed as a grist and flouring-mill for many years ; that its value consisted almost wholly in its use for that purpose ; that the plaintiffs have not been permitted peaceably to occupy and enjoy the premises or the mill property, privileges and water power, but that, on the contrary, one Douglass at the time of the conveyance was the lawful owner of a certain mill-dam in the river below the premises conveyed to the plaintiffs and of the right to raise the height of such dam eight and one-half inches above the height at which it was maintained at the time of the conveyance to the plaintiffs, and that having such right he did raise his dam to such height and did thereby cause the water of the river to set back upon the premises conveyed to the plaintiffs, and to flood a portion thereof, and to impede the discharge of water from their wheel-pit and race-way, and the operation of their mill, and did thus evict them from a portion of their premises, deprive them of the use and enjoyment thereof, and cause them other damage ; and it is also alleged that after due notice to the defendant, and with his approval, in order to test the right of Douglass so to raise his dam, the plaintiffs brought an action against him, in which he established his right so to raise and maintain the dam.

By his demurrer to the complaint the defendant admitted all

these allegations of fact, and the sole question for our determination is, whether the facts alleged showed a breach of the covenant contained in defendant's deed, his contention being that the facts failed to show such an eviction from the premises conveyed, or some portion thereof, as was absolutely essential to the maintenance of the action.

There can be no dispute that the covenant for quiet enjoyment can be broken only by an eviction, actual or constructive, from the premises conveyed, or some portion thereof. This is not a mere technical rule, having no foundation in principle or justice, but it has its foundation in the reason that the covenantee, who has obtained possession, should not be permitted to recover for breach of the covenant for a mere failure or defect of title, so long as he is left in possession, as he may never be disturbed and thus never suffer damage. The covenantor should, therefore, be held liable, not only in all cases coming technically within the letter of the rule, but also in all cases falling really within its reason. It has, therefore, been held that where the covenantee has not been able to obtain the possession of the premises conveyed on account of a paramount outstanding title, and thus has in fact never been ousted from the possession, he may yet maintain an action for the breach of the covenant. (*Shattuck* v. *Lamb*, 65 N. Y. 499.) It has also been held that where there is an outstanding title to an easement in the premises conveyed, which materially impairs the value of the premises and interferes with the use and possession of some portion thereof, the covenant is broken although there is not a technical physical ouster from the actual possession of any portion thereof. (1 Bouvier's Law Dict. 543; *Rea* v. *Minkler*, 5 Lans. 196; *Adams* v. *Conover*, 87 N. Y. 422; *Clark* v. *Estate of Conroe*, 38 Vt. 469; *Russ* v. *Steele*, 40 id. 310; *Lamb* v. *Danforth*, 59 Me. 322.)

In this case Douglass had a paramount right to an easement to set back the water of the river and to flood the land conveyed, and in the exercise of that right he did cause a portion of the land conveyed to be flooded and covered with water, and of such land the plaintiff was deprived of the use, and really

and practically of the possession, and thus there was substantially an eviction. Suppose Douglass, in the exercise of an easement owned by him, had flooded the whole of plaintiffs' land to the depth of one foot or ten feet, thus destroying the water power and depriving the plaintiffs of any beneficial use or possession of the land, could it be maintained that there had been no eviction, and, therefore, no breach of the covenant for quiet enjoyment? To hold that it could would be to disregard the reason of the rule, and to sacrifice substance for the mere form of words in which the rule is generally expressed. So far as one permanently floods the land of another there is a physical invasion of the land and a practical ouster of the possession thereof; and in a real sense such land is taken from the owner, and so it has been held. (*Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Eaton* v. *R. R. Co.*, 51 N. H. 504; *Story* v. *N. Y. Elevated R. R. Co.*, 90 N. Y. 185.)

Our argument may receive some re-enforcement also from the history of real estate law. Anciently, by the feudal constitution, if the vassal's title to the fee which he had received at the hands of his lord, and for which he was to render certain duties, failed, he had the right to call upon his lord in a proper form of action for other land of equal value. The modern personal covenants contained in deeds, which are not more than two hundred years old, are a substitute for this ancient right. Now, instead of other lands, the grantee recovers upon his covenants damages for the land from which he was ousted or to which his title fails. Suppose some feudal lord had given to his vassal land which another person subsequently flooded under a paramount right, can it be doubted that the lord could have been compelled to give other land of equal value? And so now, instead of land, the grantor should upon his covenant of warranty be compelled to give damages.

We think, therefore, that so far as Douglass, under paramount right, invaded the land conveyed to the plaintiffs and flooded the same with water, there was an eviction sufficient for the maintenance of this action.

But there is still another view which may be taken of this

case. Every owner of land through which a natural stream of water flows has the right to have it flow from his land unobstructed in its natural channel, unless such right has been curtailed by grant or adverse possession. This is said to be a natural right *publici juris.* The learned counsel for the defendant contends that this right rests upon an easement which an upper owner upon a stream has in the lands below him for the passage of the water over such lands in its natural channel, and his contention has some authority for its support. (*Cary* v. *Daniels,* 5 Metc. 236; *Prescott* v. *Williams,* id. 429.) Such rights have some semblance to easements, and no harm or inconvenience can probably come from classifying them as such for some purposes. But they are not in fact real easements. Every easement is supposed to have its origin in grant or prescription which presupposes a grant, and it is quite absurd to suppose that the owner of land at the head of a stream has an easement by grant or prescription for its flow over all the land of the riparian owners for many miles to its mouth. Would any of the usual covenants in a deed be violated because a natural stream of water flowed through the land and the upper owners, therefore, had an easement in such land? Clearly not. In Washburn on Easements, 19, it is said: "The term 'natural easements,' as applicable especially to the case of flowing water, is often made use of by courts of common law and is not likely to mislead the reader, inasmuch as the context usually shows in what sense the term is employed. But as will appear hereafter that an easement when technically considered is an interest which one man has in another's estate by grant or its equivalent, prescription, it seems at first thought to be inconsistent to characterize what belongs to an estate as inseparably incident thereto and forming part and parcel thereof, by the name of easement or servitude. It may be in many respects, and perhaps most respects, like an easement and may be treated accordingly, and yet will hardly come within the requirements of what constitutes an easement at common law." Again at page 276 the learned author, speaking of the flow of water in natural streams, says: "The right of enjoying this flow with-

out disturbance or interruption by any other proprietor is one *jure naturæ* and is an incident of property in the land, not an appurtenance to it, like the right he has to enjoy the soil itself in its natural state unaffected by the tortious acts of a neighboring land-owner. It is an inseparable incident to the ownership of land, made by an inflexible rule of law an absolute and fixed right, and can only be lost by grant or twenty years adverse possession." In Angell on Water-Courses (§ 90), it is said: " The right to the use of the flow of water in its natural course and to the maintenance of its fall on the land of the proprietor is not what is called an easement, because it is inseparably connected with and inherent in the property in the land; it is a parcel of the inheritance and passes with it." In *Stokoe* v. *Singers* (8 Ell. & Bl. 31), ERLE, J., said: "The right to the natural flow of water is not an easement, but a natural right." In *Johnson* v. *Jordan* (2 Metc. 234), SHAW, Ch. J., speaking of the right of an owner of land through which a stream of water flowed, to have the water come to and pass from his land unobstructed, said: "It is inseparably annexed to the soil and passes with it, not as an easement, not as an appurtenance, but as parcel." Easements proper are incorporeal rights, but the right to have water flow in its natural channel is a corporeal right.

So the right to have the water flow to and from the land conveyed to the plaintiffs was a corporeal right, and part and parcel of the premises granted, and was, therefore, covered by the deed. The plaintiffs were disturbed, in the possession of the parcel thus granted, by Douglass under his paramount right, and in part evicted therefrom and, therefore, there was a breach of the covenant for quiet enjoyment. They bought a water power. That was a corporeal right covered by the deed, and they were evicted from a portion thereof.

These views are in no degree in conflict with any thing decided in the case of *Green* v. *Collins* (86 N. Y. 246.) There the easement in question was an artificial one, an incorporeal hereditament, and it was held that because it did not belong to the grantor it did not pass as appurtenant to the land

granted, was not covered by the deed, and hence was not within the scope of the covenant for quiet enjoyment. That case rests upon ample authority, and the views herein expressed show that it cannot apply to such a case as this.

The learned counsel for the plaintiffs has relied much upon the case of *Adams* v. *Conover* (*supra*.) To some extent that case is an authority for his contention. There, as here, the plaintiff bought water power, a corporeal right, and he was dispossessed of some of it. He bought a dam at a certain height. That was part and parcel of the premises which the deed professed to convey, and he was obliged to remove some of it, and thus he was actually deprived of a portion of the premises covered by his deed. That case too rests upon ample authority. Suppose one takes a deed with a covenant for quiet enjoyment of land with a house thereon, and it turns out that a third person has title to the house which he removes. Can it be doubted that the grantor would be liable on his covenant for quiet enjoyment? (*Combs* v. *Fisher*, 3 Bibb, 51; *Funk* v. *Creswell*, 5 Iowa, 88; *West* v. *Stewart*, 7 Penn. St. 122; *Mott* v. *Palmer*, 1 N. Y. 564.) If, in the case supposed, the house is three stories high, and in consequence of covenants with adjoining land-owners there is no right to maintain more than two stories, so that the grantee is obliged to remove the third story, would there not be a dispossession and eviction of so much of the premises conveyed, and thus a breach of the covenant?

It has sometimes been supposed that there was a conflict between the cases of *Green* v. *Collins* and *Adams* v. *Conover*. The distinction between the two cases was clearly pointed out in the opinion written in the last case. In the one case the grantee got all that was covered by his deed and there was no breach of warranty. In the other case the grantee did not get all that was covered by his deed, and there was a breach of warranty. The distinction between the two cases is as wide as a gulf, and it would seem that any diligent, unprejudiced, competent investigator should not fail to perceive it.

The claim is also made, on behalf of the defendant, that the

plaintiffs must be presumed to have known of the paramount right of Douglass at the time of their purchase, and hence that they cannot now complain of its existence.     But it does not appear that that right was apparent, and there can be no presumption that they knew of it.    If such knowledge made any difference, it was matter of defense which it was incumbent upon the defendant to establish.

We, therefore, conclude that the judgment should be affirmed, with costs, with leave to the defendant to answer on payment of the costs within twenty days after their adjustment.

All concur.

Judgment accordingly.