SAMUEL KLEINBERG and Another, Appellants, *v.* MORRIS RATETT, Respondent.

Second Department, January 18, 1929.

*A. W. Hendrickson,* for the appellants.

*C. W. Ticknor,* for the respondent.

YOUNG, J. The action is brought by plaintiffs to recover the down payment made by them on a contract for the purchase of certain real property, upon the ground that the defendant was unable to give a marketable title to the premises in question, free from incumbrances, in that they were incumbered by a stream of water flowing through a conduit or pipe about four feet underground across the property. The answer, after denying that the stream in question was an incumbrance, sets forth a separate defense and counterclaim for specific performance of the contract. The learned Special Term made a decision in defendant's favor directing specific performance of the contract, and from the judgment entered thereupon this appeal is taken.

The facts are undisputed and there is but a single question of law involved. The property which is the subject of this litigation is located at the northeasterly corner of East Main street and Lundy lane in the village of Mount Kisco. East Main street runs in a substantially northerly and southerly direction and Lundy lane begins at East Main street and runs easterly therefrom. South of Lundy lane and running easterly from East Main street

is Lenox avenue, and south of Lenox avenue appears an open brook, which is carried under Lenox avenue and then appears on the property abutting the northerly side of Lenox avenue. It is carried under the building on that lot, and under the lot adjoining on the north, through a twenty-four-inch pipe into a manhole located in Lundy lane, and from thence through a similar pipe across Lundy lane diagonally to the southeasterly corner of the property in question; then through a similar pipe under that property to the northwesterly corner thereof, and then diagonally across and under East Main street until it reaches the northeasterly corner of a small flower shop at the northwesterly corner of Dakin avenue, and it then again becomes an open brook. The whole length of this twenty-four-inch pipe appears to be approximately three hundred and fifty-five feet. The property in question has a front on East Main street of sixty-six feet, on Lundy lane sixty-seven feet. The distance from the southeasterly corner of the property to the northwesterly corner thereof is approximately one hundred feet, and the testimony is that this pipe line runs on this diagonal line about four to six feet underground. There are buildings erected on the property, but none of them has any cellar except the corner building which has a small cellar in the front.

There was testimony on behalf of the defendant to show that the course in which this brook ran through this pipe line could be discovered by observing its course through the manhole on Lundy lane. But the fact that the brook could be observed wherever it was open and its course noted by looking in the manhole would not charge the plaintiffs with notice or knowledge of the fact of the twenty-four-inch pipe line carrying the brook under the property in question. Plaintiffs denied any knowledge of the brook at or before the time of the execution of the contract, and only learned of it afterwards, and, after investigation, rejected the title upon the ground above stated. On the property itself, of course, there would be nothing to indicate the presence of this twenty-four-inch pipe line. The only question presented on this appeal, therefore, is whether this twenty-four-inch pipe line, carrying what was before an open brook, constituted an incumbrance. Such a question does not seem to have been determined in any reported case so far as I can find. The learned Special Term relied upon the case of *Archer* v. *Archer* (84 Hun, 297), which holds in substance that a purchaser of property is bound to take notice of the physical conditions thereof, and that the fact that a stream of running water flows over the land purchased is not a valid objection to the title; that, strictly speaking, a natural stream is not an ease-

ment, but an incident of the property over which it flows. The situation in the case cited, however, was very different from that in the case at bar. There, the stream in question was open and visible, and the purchaser, of course, must have had notice of an obvious physical condition of the land. In the case at bar, plaintiffs had no such notice or knowledge.

While a running stream is not considered strictly an easement, it was said in *Scriver* v. *Smith* (100 N. Y. 471, 479): " Such rights have some semblance to easements, and no harm or inconvenience can probably come from classifying them as such for some purposes. But they are not in fact real easements. Every easement is supposed to have its origin in grant or prescription which presupposes a grant."

Plaintiffs, had they taken title to the property, could not have cut this pipe where it entered the property line, dammed up the water so that it could not enter their property, and so force it back upon the adjoining property which is Lundy lane, a public street. In this sense, it seems to me clear that the village of Mount Kisco had a right, in the nature of an easement, to have this stream continued over the property in question uninterrupted in its flow, so as not to overflow the street. It is elementary that a riparian proprietor has a right to the uninterrupted flow of the stream, and a lower proprietor, therefore, has a right or easement to that uninterrupted flow, and for any interruption thereof may have damages against the riparian owner who caused it. It has also been held that the right of a lower riparian proprietor to raise a dam, which right is given to him by grant, is an easement against the property of an upper riparian owner, and, if not excepted in the conveyance, the act of the lower owner in raising the height of the dam and flooding the land conveyed is a breach of the covenant of quiet enjoyment. (*Scriver* v. *Smith*, *supra*.) The plain implication of this decision is that, but for the grant of the easement, the raising of the lower dam and the flooding of plaintiff's land would be unlawful and a nuisance. (See *Adams* v. *Conover*, 87 N. Y. 422.)

In my opinion, the principle governing an open stream of water crossing property does not apply to the situation disclosed in the case at bar. A natural watercourse is defined as a natural stream flowing in a definite bed or channel with banks or sides, having permanent sources of supply. (*Barkley* v. *Wilcox*, 86 N. Y. 140, 143.) The stream in question in the case at bar answers a portion of this definition in being a natural stream, but it is quite probable that it no longer flows " in a defined bed or channel, with banks and sides," because, at some time in its career, it was confined in its flow over the property in question and adjacent property to a

twenty-four-inch pipe. The words, " a defined bed or channel, with banks and sides," contained in the above definition, mean the natural bed or channel and the natural banks and sides, and not an artificial pipe. This stream is somewhat similar to a surface water drain, and, indeed, it collects through the manhole in Lundy lane the drainage of surface water in that vicinity. If it were a mere drain and not a natural stream, it might or might not constitute an easement across the property in question by prescription. It has been there for quite a long time, although for how long the record does not disclose. But we cannot ignore the fact that this is not a mere subsurface drain. It is a part of a running stream, and cannot, therefore, be cut off by the plaintiffs so as to set back the water and flood the adjacent property. The principle of *Archer* v. *Archer* (*supra*) is based upon the doctrine laid down in *Whitbeck* v. *Cook* (15 Johns. 483), that a public highway crossing property is not an incumbrance. There exists, however, an exception to this rule, and it has been held that where a strip of the property in question had been dedicated by a prior owner to public use for part of a street, but had not, when plaintiff purchased, been used as such, and there was then no open, visible highway, but the strip was fenced across on the front and inclosed with the rest of the land and there was nothing upon the premises to indicate that it was part of a public street or to put him on inquiry in regard to it, plaintiffs' eviction therefrom was a breach of the covenant for quiet enjoyment. (*Hymes* v. *Esty*, 116 N. Y. 501; 133 id. 342.) If a highway not used as such, but inclosed and used as part of the property, with nothing to show that it is a highway, is an incumbrance, a natural stream, which had been inclosed in a pipe and the land filled in over it to some depth, so that it is no longer a visible and open stream, would seem likewise to be an incumbrance.

An incumbrance at law is defined as " every right to or interest in the land, which may subsist in another, to the diminution of the value of the land, but consistent with the power to pass the fee by a conveyance." (*Forster* v. *Scott*, 136 N. Y. 577, 582.)

This pipe line has a tendency to depreciate the value of the property, because its course diagonally across the property prevents the excavation for a cellar to any depth greater than about four feet, and there are now no cellars under the buildings where this pipe crosses. To change its course would, of course, involve some expense, and to carry it around the property and through the streets would require the consent of the village, as it cannot be lawfully cut off by plaintiffs. In my opinion, therefore, this stream, as it crosses the property in question, constitutes an incumbrance which renders the title of the property unmarketable, and the

judgment should, therefore, be reversed upon the law and the facts, with costs, and judgment directed for the plaintiffs for the relief demanded in the complaint, with costs. Findings of fact and conclusions of law inconsistent with this opinion should be reversed, and new findings made in accordance herewith.

LAZANSKY, P. J., RICH, CARSWELL and SCUDDER, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment directed for the plaintiffs for the relief demanded in the complaint, with costs. Findings of fact and conclusions of law inconsistent with this decision are reversed, and new findings will be made in accordance herewith. Settle order on notice.