THE CITY OF SYRACUSE, Respondent, *v.* RICHARD M. STACEY and Others, Appellants, Impleaded with Others.

*Eminent domain — ownership of water rights — diversion of water from a natural stream — proceedings under chapter 291 of 1889, as amended by chapter 314 of 1890, governed by chapter 23 of the Code of Civil Procedure — statute to be strictly observed.*

Condemnation proceedings instituted under the provisions of chapter 291 of the Laws of 1889, as amended by chapter 314 of the Laws of 1890, if instituted subsequent to the taking effect of chapter 95 of the Laws of 1890, are governed by the provisions of chapter 23 of the Code of Civil Procedure and such provisions of the Code will be applied to and control such proceeding.

It is the duty of the city of Syracuse, under the provisions of chapter 291 of the Laws of 1889, as amended by chapter 314 of the Laws of 1890, to acquire and extinguish all water-power rights upon the outlet of Skaneateles lake to be affected by the proposed storage of water therein, in condemnation proceedings taken under the provisions of the said act, and the petition in condemnation proceedings under such act should describe and specify all the water-power rights affected by the proposed storage and taking of the water from such lake.

It is the duty of the petitioner in condemnation proceedings to obey the provisions of section 3360 of the Code of Civil Procedure and to implicitly and accurately follow its requirements. In doing so it is the petitioner's duty to insert in the petition an accurate specific description, with reasonable certainty, of the precise property rights sought to be condemned, to the end that the proceedings shall comply with the statute, and the property owner be enabled by the petition to understand just what is sought to be taken from him and just what is left, if anything, after the property rights have been taken under the proceedings instituted by the petition.

The ownership which persons owning property bordering on a lake have in the waterflow and water rights thereof, is a corporeal right, an incident of property in, and parcel of, the land owned by them.

The Legislature is the sole judge of the expediency of allowing an interference with the natural rights of the citizens of the State in water powers and rights owned by them, and as to the expediency of exercising the right of eminent domain for any public purpose.

The power of eminent domain, which resides in the State as an attribute of sovereignty, is dormant until called into exercise by an act of the Legislature. Until a statute authorizes an exercise of the power, it is latent and potential merely, and not active or efficient, and the State can neither exercise this prerogative, nor can it delegate its exercise, except through the medium of legislation.

Whenever an attempt is made either by the officers of the State or by a corporation organized for a public purpose to take private property under the power of eminent domain, the officers or body claiming the right must be able to point to a statute conferring it. In the absence of statutory authority private property cannot be invaded by this power, however strong may be the reasons for the appropriation.

In construing statutes which are claimed to authorize the exercise of the power of eminent domain, a strict rather than a liberal construction is the rule. Such statutes assume to call into active operation a power which, however essential to the existence of the government, is in derogation of the ordinary rights of private ownership, and of the control which an owner usually has of his property.

It is proper to exact of a petitioner in condemnation proceedings that it should fulfill and carry out all the conditions and restrictions imposed by the legislative acts under which it seeks to derive important and valuable rights and privileges, and so far as the conditions and restrictions, found in the statute proceeded under, relate to the rights of the owners whose property is sought to be taken, the owners are entitled to have the full benefit thereof.

The fact that the Legislature by chapter 291 of the Laws of 1889, as amended by chapter 314 of the Laws of 1890, authorized the city of Syracuse to take water from Skaneateles lake by means of a conduit of thirty-inch carrying capacity, does not deprive the owners of the right to have the full benefit of the restrictions and conditions named in such statute, and to insist that the acquisition or extinguishment should be of all water powers and water rights upon the outlet to the lake in question.

The right to divert the waters from a natural stream can only be acquired under and by virtue of the sovereign right of eminent domain and upon making just compensation, which right it is in certain cases competent for the Legislature to grant to corporations.

APPEAL by the defendants, Richard M. Stacey and others, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Onondaga on the 20th day of June, 1894, denying the defendants' motion to vacate and set aside the decision of the court in this proceeding, the judgment entered thereon and the order appointing commissioners to ascertain, determine and report the compensation to be made for property and rights sought to be taken in such proceedings, and the appointment of said commissioners, and to dismiss the petition herein and such proceedings.

Also an appeal by the defendants the Skaneateles Paper Company and others, from an order of the Special Term, made on the 19th of May, 1894, entered in Onondaga county clerk's office June 20, 1894, " confirming the awards of the commissioners of appraisal herein, and directing compensation to be made to the several defendants as therein stated and from the whole of said order, except that part thereof which directs that certain of the defendants who appeared, answered and defended herein recover of the plaintiff each a bill of costs, * * * and that each of said defendants be allowed * * * the sum of five per cent on the amount of the award ;" in the notice of appeal notice was given : " That there will be brought up for review upon this appeal by said defendants, the judgment of condemnation, entered in this proceeding in the clerk's office of Onondaga county on January 28, 1893, and the order appointing commissioners of appraisal, etc., herein, entered in said clerk's office on January 30, 1893, together with all the proceedings herein antecedent to said judgment and order, including the decision herein on which said judgment was entered, and from which said judgment and order, and each of them, said defendants hereby appeal."

The plaintiff by the Syracuse water board made its petition, bearing date the 14th day of November, 1892, for the purpose of instituting condemnation proceedings against the property of the appellants and several others, and annexed to the petition were nineteen schedules in which were described the properties of the defendants.

Accompanying the petition was a notice bearing date November 14, 1892, signed by the attorneys for the Syracuse water board, "representing the city of Syracuse upon said application," to the effect that the petition would be presented to a Special Term in Onondaga county on the 3d day of December, 1892. On that day parties appeared in said term, and on motion of the attorneys for the petitioner, several amendments and corrections to the petition were made by an order that the court granted on that day; and on the 4th day of January, 1893, at said term, a further amendment was allowed to the amended petition by inserting "after the word 'watershed' the words 'not required by the State of New York for the Erie canal,' and by adding the same words 'not required by the State of New York for the Erie canal' after the word 'watershed,' where the same first occurs and immediately preceding the words 'as the same flow or might otherwise flow' in each of the several schedules annexed to the petition." Numerous objections were taken to the petition and overruled by the Special Term, and several answers were filed by the defendants to the petition, and the proceedings were adjourned from time to time. The Special Term found, after hearing the parties, among other things, as matter of fact: "In order to accomplish the purpose indicated it is necessary that the city of Syracuse should condemn and acquire all the property, rights, title and interest of the defendants, and every of them, of, in and to the waters of Skaneateles Lake and its watershed *not required* by the State of New York for the use of Erie canal, and which shall not be discharged for such use from said lake into the outlet thereof, and which may not in times of high water, or from other causes, actually escape from said lake and be discharged into the outlet thereof."

Also, that "in the year 1843 the State of New York, under the resolutions of its canal board and canal commissioners next hereinafter recited, appropriated the waters of Skaneateles lake and its outlet as a reservoir and feeder for the Erie canal."

Also, "The Erie canal upon this level is open for navigation from about the first day of May until the first day of December in every year, varying a few days from the dates mentioned, according as the weather may be at the time. These periods of navigation average seven months in a year. During the five months of

December, January, February, March and April of every year the canal is closed to navigation, and there is no water supplied or required therefor from Skaneateles lake."

Also, "During the season of canal navigation, covering an average period of seven months in each year, the quantity of water heretofore discharged by the State from the lake for the uses of the canal has varied more or less according to the condition of the lake. The average quantity thus taken from the lake for the uses of the canal during these seasons has been 70 million (70,000,000) gallons per day, except at times of high water and overflow of the dam; the quantity thus permitted to flow has at all times been regulated and determined by the gatetender under direction of superior State officers in charge of the canal."

Also, "During the seasons of closed navigation, averaging five months in every year, with the exception of times when, by reason of low water in the lake, or apprehensions of such, the State officers in charge of the canal have withheld the water wholly for the purposes of storage, the State authorities have permitted a flow and discharge from the lake through the outlet upon an average about 48 million (48,000,000) gallons per day."

Also, "The water thus discharged from the lake into the outlet during the seasons or periods of canal navigation, together with that supplied by the watershed of the outlet during the same periods, has ordinarily been more than sufficient to supply the mills upon the outlet with the water used for their machinery and other purposes. A considerable quantity, the amount of which cannot be definitely ascertained, ordinarily flows over the crest or spillways of the dams at the several mills upon the outlet, and, so far as the mill owners are concerned, has gone to waste, not being used by them."

It was also found that "the available supply of water from the entire watershed of Skaneateles lake, which finds its way into and becomes a part of the lake, upon the average for a series of years, is an amount equivalent, if equally distributed, to 61 million (61,000,000) gallons every day. The maximum carrying capacity of the proposed thirty-inch conduit from Skaneateles lake to the reservoir at or near Syracuse is fifteen million gallons per day. A draught of 15 million gallons daily from Skaneateles lake would lower the level of the lake

at the rate of two inches per month, or twenty-four inches in a year, provided no supply was in the meantime furnished or discharged into the lake."

Among the conclusions of law it was found that the State of New York "has acquired the use and the right of use of Skaneatcles lake as a reservoir, and of its outlet as a feeder for the purpose of supplying the Erie canal with water. It has the right to, at any and all times, withhold within the lake for storage purposes so much of the waters thereof as may be reasonably necessary to provide for the requirements of the canal. It has the right to discharge therefrom, during the seasons of navigation, so much thereof as may be reasonably necessary for the supply of the canal. This right of storage on the part of the State is not inconsistent with the right of storage sought by the city of Syracuse in this proceeding.

Upon making compensation therefor the city of Syracuse is entitled in this proceeding to condemn and acquire or extinguish all the rights, title and interest which the defendants, and each of them respectively, have, of, in and to the waters of Skaneatcles lake and its watershed, and to any and all use and enjoyment thereof, by reason of their ownership of or interest in the premises severally described in the amended petition herein, and as appurtenant or incident to said premises, for the purpose of supplying said city and its inhabitants with water, excepting only such and so much water from said lake as may be permitted or caused to flow from said lake into the outlet thereof from time to time, by the State of New York, its officers and agents, for the purpose of supplying the Erie canal with water. *And excepting also such water as may from time to time, from any cause, escape from said lake, and be discharged therefrom into the outlet.*"

The Special Term further found and decided as conclusion of law "that the acquisition and extinguishment of the defendants' rights, as above defined and set forth, is the acquisition or extinguishment contemplated and required by chapter 314 of the Laws of 1890. That the condemnation hereby authorized is for a public use, and for the purposes contemplated by the laws hereinbefore referred to."

It was also found that the plaintiff was entitled to the appointment of three commissioners, "who shall ascertain, determine and

report the compensation which ought justly to be made to the owners and persons interested, for the property and rights to be taken for the public use specified."

The findings of fact and law were signed on the 26th day of January, 1893, and on the twenty-eighth of January a judgment thereon was entered, among other things, adjudging that upon making compensation therefor the city is entitled in this proceeding "to condemn and acquire or extinguish all the rights, title and interest which the defendants and each of them respectively have, of, in and to the waters of Skaneateles lake and its watershed, and to any and all use and enjoyment thereof, by reason of their ownership of, or interest in, the premises severally described in the amended petition herein, and as appurtenant or incident to said premises, for the purpose of supplying said city and its inhabitants with water, *excepting only such and so much water from said lake* as may be permitted or caused to flow from said lake into the outlet thereof from time to time, by the State of New York, its officers and agents, for the purpose of supplying the Erie canal with water. And excepting only such water as may from time to time from any cause escape from said lake, and be discharged therefrom into the outlet." And it was adjudged that the city is entitled to this proceeding, as against the defendants "To condemn and acquire the right to increase the storage capacity of Skaneateles lake sufficiently to retain therein all the ordinary flow from the watershed, *and to at all times store and retain therein so much thereof as shall not be required for the Erie canal;* and subject to the rights of the State to use the same for the supply of the Erie canal, to divert therefrom at all times so much thereof as may be necessary to supply the city of Syracuse and its inhabitants with water." And it was also adjudged "That the acquisition and extinguishment of the defendants' rights *as above defined* and set forth, is the acquisition or extinguishment contemplated and required by chapter 314 of the Laws of 1890." And it was further adjudged "That the plaintiff is entitled to condemn and acquire and extinguish all and several the rights, title and interest of the defendants  *  *  *  of, in and to the waters of Skaneateles lake and its watershed not required by the State of New York for the Erie canal, as the same flow or might otherwise flow in the outlet of said lake, and upon, along, over, con-

tiguous and appurtenant to the land and premises adjacent to said
outlet described as follows : " Similar language is used as to each
parcel, and following the language is a description of the premises
owned by the defendants.

On the 30th of January, 1893, the Special Term granted an order
designating the commissioners. That order was amended by the
Special Term on the 8th of February, 1893, by striking out the name
of Dyer as one of the commissioners, and inserting the name of Palmer
as one of the commissioners instead thereof. The commissioners
qualified and proceeeded to hear the parties and took voluminous
proofs in respect to the several rights and ownerships of the parties,
and on the 7th of May, 1894, executed and delivered their report, in
which they certify that, having viewed the premises and heard the
proofs and allegations of the parties, after the testimony was closed, all
being present, they did " Without any unnecessary delay, ascertain
and determine the compensation which ought justly to be made by
the city of Syracuse *to the owners of such property* and water rights
and the persons interested therein." And in their report they stated
the amount which should be paid to the several owners of property,
as will more fully appear by reference to their report.

*George Barrow, Knapp, Nottingham & Andrews* and *Charles
Hawley*, for the appellants.

*Charles L. Stone, William A. Beach* and *George N. Kennedy*,
for the respondent.

HARDIN, P. J. :

Chapter 291 of the Laws of 1889 is entitled " An act to establish
and maintain a water department in and for the city of Syracuse."
The 3d section of the act authorizes and directs the water board for
and in the name of the city of Syracuse " to acquire, construct,
maintain, control and operate a system of water works to furnish the
city of Syracuse and its inhabitants with water from Skaneateles
lake." In the 4th section of the act it was provided that in case the
water board shall be unable to acquire by purchase " any property
necessary for the acquisition, construction, maintenance, control and
operation of the system of water works contemplated by this act,
including the property, rights of property, privileges and franchises

owned or possessed by any corporation  * * *  it is hereby authorized to acquire the same in the manner following." In the 5th section it is provided that the board may present its petition to the Supreme Court, at a General or Special Term thereof, praying for the appointment of commissioners of appraisal to ascertain and determine the amount of compensation which ought justly to be made to either or any of the owners or persons interested in any or all of the property, rights, privileges and franchises deemed necessary by the board. The section contains a further provision, viz. : "*It shall contain a description of the property sought to be acquired*, and must state in effect that the property is requisite to the acquiring, constructing, improving, maintaining, controlling or operating said water works." The section also provides for several other details to be inserted in the petition. Section 6 of the act provides how the petition shall be served. Section 7 confers upon the court power to appoint special guardians for infants and idiots, and section 8 provides "any of the persons whose estates or interests are to be affected by the proceedings may show cause against granting the prayer of the petition, and may to that end disprove any of the facts alleged therein." And it also provides " the court shall hear the proofs and allegations of the parties, and if no sufficient cause is shown against granting the prayer of the petition, it shall make an order for the appointment of three disinterested and competent freeholders  * * *  to ascertain and determine the compensation which ought justly to be made to the owners or persons interested in the property so to be acquired." Further provisions are found in the act regulating further proceedings. Section 18 of the act of 1889 was amended by chapter 314 of the Laws of 1890, and in the section as amended it was provided, viz. : " Before any water shall be taken from Skaneateles lake under the provisions of this act, the city of Syracuse shall acquire or extinguish all water power rights upon the outlet of said lake to be affected by the proposed storage of water. The city of Syracuse shall at all times protect and save harmless the State of New York from and against all claims and demands of riparian owners upon said lake and outlet for loss or damage occasioned by any act or structure authorized hereby. The powers granted to the Syracuse

water board to acquire property under this act and to make payment therefor shall be deemed to include full power and authority to do and perform all acts and things necessary or proper to enable said city to acquire, store and obtain water from Skaneateles lake in accordance with the provisions of this section." Plaintiff's petition was prepared and verified on the 14th day of November, 1892. Chapter 95 of the Laws of 1890 is entitled "An act to amend the Code of Civil Procedure," and is known as chapter 23 of the Code of Civil Procedure, and the first section of the chapter provides, viz. : " This title shall be known as the Condemnation Law." The chapter contains twenty-eight sections, which are numbered as sections 3357 to 3397 of the Code inclusive, and in the last section of chapter 95 it is provided : " This title shall take effect May first, one thousand eight hundred and ninety." In section 3383, as amended by chapter 247 of the Laws of 1890, it was provided that "so much of all acts and parts of acts as prescribe a method of procedure in proceedings for the condemnation of real property for a public use is repealed," except such acts and parts of acts as prescribe a method of procedure in certain specified cases not important to be considered, as they do not relate to the case in hand. It was expressly provided in chapter 247 that that act should take effect immediately, and it was passed on the 30th day of April, 1890.

In *Dansville, etc., R. R. Co.* v. *Hammond* (77 Hun, 41) it was said : "A complete system of practice in condemnation proceedings is provided by chapter 23 of the Code of Civil Procedure."

In *Matter of Trustees* (137 N. Y. 97) chapter 23 of the Code of Civil Procedure was assumed to be a revision of the Condemnation Law.

Inasmuch as the plaintiff's proceedings were instituted subsequent to the time when the provisions of the General Condemnation Law took effect, the provisions found therein should be applied to and control and govern such proceedings.

(2) Plaintiff, with a fixed purpose of acquiring benefits and privileges conferred by section 18, as amended in 1890, instituted the proceedings for the purpose of complying with that part of the section found in the following language : " Before any water shall be taken from Skaneateles lake under the provisions of this act, the city of Syracuse shall acquire or extinquish all water-power rights

upon the outlet of said lake to be affected by the proposed storage of water."

In *Sweet* v. *City of Syracuse* (129 N. Y. 333) O'BRIEN, J., said: " Between the lake and the canal numerous mills are situated along the outlet, being supplied with power from the running water, and these are some of the water rights referred to in the statute which the city is bound to purchase or extinguish." In the same case, at page 339, EARL, J., said: " Before any water shall be taken from Skaneateles lake under the provisions of this act, the city of Syracuse shall acquire or extinguish all water-power rights upon the outlet of said lake to be affected by the proposed storage of water." In further elucidation of the provisions of section 18 the same learned judge said: " The city of Syracuse shall, at all times, protect and save harmless the State of New York from and against all claims and demands of riparian owners upon said lake and outlet for loss or damage occasioned by any act or structure authorized hereby." To avail of the provisions of the statute as thus interpreted was the purpose of the city in preparing the petition in this case, to the end that the rights of the several defendants might be condemned, and upon payment being made therefor that the same be extinguished or acquired by the plaintiff. After the petition was prepared and served, and the parties were given notice thereof and appeared in court, an application was made to amend the petition.

Section 3368 of the Condemnation Law provides that title 1 of chapter 8 of this act (the Code of Civil Procedure) shall also apply to proceedings had under this title. Upon turning to that chapter we find that it embraces, among others, sections 721, 722 and 723, which confer upon the court power to correct mistakes, omissions, defects and irregularities, and to amend any pleading or other proceeding by inserting an allegation material to the case. The court in granting the amendment asked for to the petition did not exceed its power. Upon turning to the petition, as amended, we find that it contains language inserted therein, as it must be assumed, for the purpose of describing, pursuant to section 3360 of the Code of Civil Procedure, the property, rights and interests sought to be condemned. That section provides that the proceedings shall be instituted by presentation of a petition by the plaintiff "setting

forth the following facts : * * * 2. A specific description of the property to be condemned, and its location by metes and bounds, with reasonable certainty. * * * 8. A demand for relief ; that it may be adjudged that the public use requires the *condemnation of the real property* described, and that the plaintiff is entitled to take and hold such property for the public use specified, upon making compensation therefor, and that commissioners of appraisal be appointed to ascertain the compensation to be made to the owners for *the property so taken.*"

In *The Matter of Water Commissioners of Amsterdam* (96 N. Y. 360) it was said : "It has been uniformly held that, in proceedings of this character, extreme accuracy is essential for the protection of the rights of all parties. (*Matter of the N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 191.) There must be no uncertainty in the description of the property to be taken nor in the degree of interest to be acquired." Section 18 of the act of 1890, already alluded to (Chap. 314), confers upon the water board power, " under the restrictions and conditions hereinafter mentioned " in the statute, " to take and conduct water not required for the Erie canal from Skaneateles lake to said city, through a pipe or main not exceeding thirty inches in diameter, for the purpose of supplying said city and its inhabitants with water. Before any water shall be so taken, however, the water board shall, at the cost and expense of said city, increase the storage capacity of said lake sufficiently to store therein all the ordinary flow of its watershed. * * * The dam, and all structures connected therewith, together with the regulation at all times of the flow of water from said lake into the aforesaid pipe, shall be and continue in the exclusive charge and control of the superintendent of public works." Further provisions are made as to the power of the State officers, and then it was declared, viz. : " It being understood that the rights of the city of Syracuse hereby conferred in and to such surplus waters are to be subject always to the superior claims of the State thereto." The act then provides further " restrictions and conditions " upon the power given to the city to take and conduct water not required for the Erie canal " through a pipe or main not exceeding thirty inches in diameter" in the following words: " Before any water shall be taken from Skaneateles lake, under the provisions of this act, *the*

*city of Syracuse shall acquire or extinguish all water-power rights* upon the outlet of said lake to be affected by the proposed storage of water." Riparian owners upon the outlet have rights and privileges " affected by the proposed storage of water," and those rights the act authorized and required the city " to acquire or extinguish " before taking any water from the lake under the provisions of this act. The terms of the statute received construction in this court in *Hall* v. *The City of Syracuse* (71 Hun, 466), and it was there said : " By chapter 291 of the Laws of 1889 the Syracuse water board was created and power was conferred upon it to acquire by purchase or condemnation, for and in the name of the city of Syracuse, any property necessary for the acquisition, construction, maintenance, control and operation of the system of water works contemplated by the act. By section 18 of this act, as amended in 1890 (Chap. 314), it was authorized, under certain conditions, to take water from the Skaneateles lake. One of the provisions of this section is that ' before any water shall be taken from Skaneateles lake, under the provisions of this act, the city of Syracuse shall acquire or extinguish all water-power rights upon the outlet of said lake, to be affected by the proposed storage of water.' . It was also provided that the powers granted to the water board to acquire property under the act, and to make payment therefor, shall be deemed to include full power and authority to do and perform all acts and things necessary or proper to enable the city to obtain water from the lake under the provisions of the amended section." It may be observed that the act does not in terms define the water rights and privileges of the owners upon the outlet, but carefully provides that whatever rights they have effected by the storage or taking authorized shall be acquired or extinguished before any water shall be taken under the provisions of the act. According to this compact entered into by the city with the State by accepting the provisions of the act, it becomes clearly the imperative duty of the city to acquire and extinguish " all water-power rights upon the outlet of said lake to be affected by the proposed storage of water." As we have already mentioned, one of the restrictions and conditions imposed upon the city precedent to the right to take any of the surplus waters was the requirement that the city increase the stor‐ age capacity of said lake sufficiently to store therein all the ordinary

flow of its watershed. To enable the plaintiff to comply with the requirements of the act its petition should describe and specify all the water-power rights affected by the proposed storage and taking of water from the lake. It seems reasonable to suppose the Legislature contemplated the necessity of extinguishing all the water powers and rights upon the outlet, and because of that necessity required, among the restrictions and conditions imposed upon the city, the one which could be complied with only by acquiring or extinguishing of such rights and powers. The petition as it was after being amended, and as it was precisely when the Special Term pronounced its judgment, in which it was determined that the property named therein was required for public use, and that the city was authorized to condemn, did not describe in clear and definite language all the water power rights of the several defendants owning property upon the outlet mentioned in the petition and the schedules thereto. In the seventh subdivision of the petition the following language is found: "Said city of Syracuse hereby asks to condemn and acquire all the property, rights, title and interest of the defendants and every of them, of, in and to the waters of Skaneateles lake and its watershed not required by the State of New York for the Erie canal, and to any part and use thereof as the same flows or might flow through the outlet of said lake, along, over, upon, contiguous and appurtenant to said parcels respectively, except for the use, diversion and storage thereof for the uses and purposes of the city of Syracuse and its inhabitants as a source of water supply as aforesaid." In the prayer of the petition it was asked that it may be adjudged that the public use requires the condemnation of "all the right, title and interest of the defendants respectively and every of them of, in and to the waters of Skaneateles lake and its watershed, as the same flow or might otherwise flow in the outlet of said lake, and upon, along, over, contiguous and appurtenant to the several parcels of land described in the schedules hereof owned by them respectively, or in which they have any interest, *except so much thereof as from time to time by lawful authority of the State of New York and its representatives*, may be discharged from said lake and permitted to flow through the outlet thereof for the purpose of supplying the Erie canal; and that the plaintiff is entitled to take, hold and forever enjoy the right to store, divert and use the waters of Skaneate-

les lake as a reservoir and source of water supply for the city of Syracuse and its inhabitants, as aforesaid, *except so much thereof as from time to time by lawful authority of the State of New York and its officers* may be discharged from said lake and permitted to flow through the outlet thereof for the purpose of supplying the Erie canal." In the schedules, after referring specifically to the property of each defendant, it was said : " The plaintiff asks to condemn and acquire all and several the rights, title and interest of the defendants   *   *   *   of, in and to the waters of Skaneateles lake and its watershed not required by the State of New York for the Erie canal, as the same flow or might otherwise flow in the outlet of said lake, and upon, along, over, contiguous and appurtenant to the land and premises adjacent to said outlet." Then follow descriptions of the sundry parcels owned by the several defendants against whom the proceedings were instituted. Notwithstanding the interpretation given to section 18 of the act of 1889, as amended by chapter 314 of the Laws of 1890, at the trial term, and the construction of the amended petition found in the judgment entered upon the decision made at the trial term, extensive discussions were held before the commissioners as to the meaning of the language used in the petition so far as it relates to a description of the property and water rights specified and required to be obtained by the provisions of the act; the commissioners before closing their awards inserted therein the following language : " The foregoing awards of compensation are based upon an appropriation by the city of Syracuse of all the water rights of the several claimants of, in and to the waters of Skaneateles lake and its watershed, with the right to store in said lake and to divert therefrom, as may at any time be authorized by law, so much of the waters of said lake and its watershed as shall not be required by the State of New York for the Erie canal." As already stated, section 3360 of the Code requires the petition to contain " a specific description of the property to be condemned and its location, by metes and bounds, with reasonable certainty ; " and subdivision 8 provides that the demand for relief shall be for the condemnation " of the real property described ; " and that commissioners of appraisal be appointed to ascertain the compensation to be made " to the owners for the property so taken."

It was the duty of the plaintiff to obey the provisions of the statute and implicitly and accurately follow its requirements. In doing so it was its duty to insert an accurate, specific description, with reasonable certainty, of the precise property rights to be condemned, to the end that the proceedings should comply with the statute and the defendants be enabled by the petition to understand just what was sought to be taken from them and just what would be left, if anything, after the taking had been had under the proceedings instituted by the petition. The ownership which the defendants have in the water flow and water rights is a corporeal right, "an incident of property in, and parcel of the land" owned by them. (*Scriver* v. *Smith*, 100 N. Y. 471 ; Angell on Water Courses, § 90.)

*In Matter of N. Y. C. R. R. Co.* (70 N. Y. 191) it was said there must be no uncertainty in the description nor in the degree of interest to be acquired. To the same effect is *Matter of Water Commissioners of Amsterdam* (96 N. Y. 361).

In *Hayden* v. *State* (132 N. Y. 533) it was held that where a permanent appropriation is sought to be had of land or water "the quantity must be definitely ascertained and described so that the owner may know how much he has lost and what he is entitled to be compensated for." And in the course of the opinion it was said "if the water to be appropriated is described as *all* in a certain lake, or all flowing in a particular stream, such would undoubtedly be a sufficiently definite description. But in this case the resolution did not state that *all* of the water of the outlet, or that any particular quantity or part of it was appropriated, and the description was too indefinite to effect a legal appropriation."

In *People ex rel. Eckerson* v. *Trustees* (137 N. Y. 88) a statute authorizing condemnation proceedings was under consideration, and ANDREWS, Ch. J., observed : "The statute can only be satisfied by a reasonably accurate description by boundaries or fixed monuments ;" and in that case it was intimated that the difficulty was not cured because, in the course of the hearing, the claim of the petitioner was limited "to a strip of land ninety feet in length."

In *Metropolitan El. Ry. Co.* v. *Dominick* (55 Hun, 199) condemnation proceedings were brought in review, and it was there held that in a proceeding "To condemn property rights extreme accuracy is required in the description of the property sought to be

acquired, and there must be no uncertainty in such description or in the degree of interest sought to be acquired." In the course of the opinion in that case it was said : "The property owner's rights should not be left even to doubtful, though plausible, construction." It was claimed by the learned counsel for the plaintiff before the Special Term, and before the commissioners and has been argued before this court that the "Appropriation by the State in 1843 of the Skaneateles waters cut off the rights of riparian owners along the outlet ; " and a similar claim was made by the Attorney-General in behalf of the State in the case of *Waller* v. *State* (144 N. Y. 579, 593). That claim has been refuted by the Court of Appeals (since the decision of this case at Special Term) and that court has held "That the rights of the owners on the stream below were not included in the words of appropriation in the resolution of the Canal Board, and so they had no grounds upon which to base an appearance and claim any permanent damage to their rights." In the course of the opinion of PECKHAM, J., delivered in that case, he said : "We do not think that by the action of the Canal Board or the Canal Commissioners, or their combined action, these rights of the owners upon the stream below were included in the words of appropriation in the resolution of the Canal Board. Therefore, neither they nor their predecessors had any ground upon which to base an appearance before the Canal Appraisers and attempt to prove any permanent damage to their rights by virtue of the resolution of appropriation. The appropriation did not touch them or their rights. * * * This policy on the part of the State not to then take the rights of the riparian owners farther down the stream was not unwise at the time. For more than twenty years after the appropriation as stated, there was no trouble with these owners, and the State had all the water it required. And for more than twenty years in addition the occasions have been few for withholding the water to the damage of the owners. It would probably have been quite expensive to extinguish those rights at that time, and the necessity for doing so was not present. The State continued on, therefore, and when the necessity arose for temporarily withholding water it was done, its liability for the damage it thus caused was acknowledged, and it was paid under legislative sanction. It is conceded that the State has never in fact paid for the permanent appro-

priation of these rights, and we find no hardship in making it liable for causing them temporary damage since the last payment on that account. * * * The act itself, however, which enabled the city of Syracuse to take the water upon conditions specified, recognizes that there might be important rights on the part of these lower owners on the stream, and indeed the act seems to assume that there were, and it provides that the city shall not go on with the construction of the work, unless, under certain circumstances, those rights are extinguished, as provided for in the act." That opinion comes to the conclusion that "the claimants made out a good cause of action against the State for damages sustained by them by the withholding of the waters from the Skaneateles creek" (or outlet) in 1892, as described in their claims. It seems as between the plaintiff and the defendants, the defendants as owners were entitled to a free and uninterrupted flow of the water in the outlet without any interference, diminution or depreciation thereof on the part of the State, until the water-power rights and privileges were acquired and extinguished by the city. The Legislature is the sole judge of the expediency of allowing an interference with the natural rights of the citizens of the State in water powers and rights owned by them, and as to the expediency of exercising the right of eminent domain for any public purpose. (*Varick* v. *Smith*, 5 Paige, 137.)

*In Matter of Poughkeepsie Bridge Company* (108 N. Y. 490) ANDREWS, J., said : "The power of eminent domain which resides in the State as an attribute of sovereignty is, nevertheless, dormant until called into exercise by an act of the Legislature. Until a statute authorizes an exercise of the power, it is latent and potential merely, and not active or efficient, and the State can neither exercise the prerogative, nor can it delegate its exercise, except through the medium of legislation. Therefore, it is that wherever an attempt is made either by the officers of the State or by a corporation organized for a public purpose to take private property under the power of eminent domain, the officers or body claiming the right must be able to point to a statute conferring it. In the absence of statutory authority private property cannot be invaded by this power, however strong may be the reasons for the appropriation. In construing statutes which are claimed to authorize the exercise of the

power of eminent domain, a strict rather than a liberal construction is the rule. Such statutes assume to call into active operation a power which, however essential to the existence of the government, is in derogation of the ordinary rights of private ownership and of the control which an owner usually has of his property." Under that wholesome doctrine it is not unreasonable to exact of the petitioner in this case that it should fulfill and carry out all the conditions and restrictions imposed upon it by the legislative acts under which it seeks to derive important and valuable rights and privileges. So far as the conditions and restrictions found in the statute relate to the rights of the defendants, they are entitled to have the full benefit thereof. Nor does the fact that the Legislature authorized the plaintiff to take by means of a conduit, with thirty-inch carrying capacity, which would be about 15,000,000 gallons per day, deprive the defendants of the right to have the full benefit of the restrictions and conditions named in the act carried out, and that the acquisition or extinguishment shall be of all water powers and water rights upon the outlet. EARL, J., in speaking of the acts authorizing the city to acquire water, says, in *Sweet* v. *The City of Syracuse (supra)*: "The right given to the city of Syracuse to draw water from the lake is, as we have seen, in its very largest extent, a mere license to be exercised under the constant supervision of the State, and subject to its paramount right and control. * * * This is not a gratuitous appropriation. The city is to increase the storage capacity of the lake, and erect and maintain at its own expense a dam and the structures connected therewith. There are two parties to the bargain, each of which gets some advantage." And it was competent for the Legislature to enact that "before any water shall be taken from Skaneateles lake under the provisions of this act, the city of Syracuse shall acquire or extinguish all water-power rights upon the outlet of said lake to be affected by the proposed storage of water."

Judge PECKHAM, at page 599 of *Waller* v. *State (supra)*, distinctly assumes that the State had not acquired the rights of riparian owners upon the outlet. He says: "This policy on the part of the State not to then take the rights of the riparian owners farther down the stream was not unwise at the time. * * * It would probably

have been quite expensive to extinguish those rights at that time, and the necessity for doing so was not present." It was competent for the Legislature, in 1890, in amending section 18, to declare the necessity, and by imperative requirement, as a condition of the license then given to the city and to burden it with the duty, "acquire or extinguish all water-power rights upon the outlet of said lake to be affected by the proposed storage of water."

Neither the petition, the findings of the trial court, the judgment nor the award of the commissioners "specify" or "describe" definitely and certainly the quantity of water necessary for the Erie canal. The canal is some nine miles from the lake, and it is supposed that the water that passes from the lake goes down along the outlet before it reaches the canal, requiring a lapse of something like twelve hours' time. In the language used by the learned Attorney-General in another forum, it may be properly said: "The quantity of water used for the canal is necessarily uncertain, depending on the volume of commerce and accidents to the canal banks." The theory of the plaintiff, as evinced by its petition and announced at the trial term, and as indicated by the decision and judgment thereof, as well as the special language found in the awards, seems to be based upon the idea that the State, by virtue of the resolution of 1843, worked an invasion of and an acquisition of the original water rights and privileges of the owners of the lands upon the outlet. The logic and theory of the opinion in *Waller* v. *State* (*supra*) are adverse to such theory, as in the latter case the court held: "The rights of the owners on the stream below were not included in the words of appropriation in the resolution of the canal board." It has been repeatedly held that the right to divert the waters from a natural stream "can only be acquired under and by virtue of the sovereign right of eminent domain, and upon making just compensation." (*Varick* v. *Smith*, 5 Paige, 137; *Clinton* v. *Myers*, 46 N. Y. 511; *Scriver* v. *Smith*, 100 id. 471; *Smith* v. *City of Rochester*, 92 id. 463, and cases cited in the opinion of RUGER, Ch. J.) The doctrine of the cases just mentioned was referred to with approval in *Hardin* v. *Jordan* (140 U. S. 394).

The acts of 1889 and 1890 authorized the plaintiff, in furtherance of its system of water works, to bring to its aid the power of eminent domain, it being competent for the Legislature to give such

power. (*Matter of Application of Union Ferry Company*, 98 N. Y. 153.) The proceedings instituted by the plaintiff rest upon those acts and the general Condemnation Law found in the Code.

The logic and doctrine of the opinion delivered in *Waller* v. *State* (*supra*) (since the trial and decision of these cases at Special Term), and the views herein expressed lead to the conclusion that, under the peculiar circumstances of these cases, the judgment at Special Term, and the awards and order confirming the same, should be reversed as to the appellants. However, the petitioner may be able to supply the necessary averments, and may also be able to cure the defects of description, and it should, therefore, have leave, if so advised, to apply at Special Term with the proper papers for the amendment of the present petition and proceedings. If such amendment be granted the present proceedings may stand and be continued as to the appellants.

MARTIN and MERWIN, JJ., concurred.

The order so far as appealed from reversed, with ten dollars costs and disbursements, and appraisal vacated, and judgment reversed, with costs of the appeal to the appellants and a new trial granted, if plaintiff elects within thirty days after the entry of an order upon this decision to proceed with the proceedings, and applies for leave to amend its petition. If such leave is not applied for or granted, the petition is dismissed, with costs of this appeal and the trial court.