(41 App. Div. 123.)

### VAN ALSTINE et al. v. BELDEN et al.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

CANALS—CONSTRUCTION—DAMAGES.

Canal Laws 1894, § 70, provides that the superintendent of public works may take possession of land necessary for the use of any canal, after causing a survey and map of such land to be made and filed in the office of the state engineer, and the service upon the owner of the land of a notice stating the time of the filing of such survey and map, and describing the land required. Defendants, as contractors, while engaged in widening and deepening the Erie Canal, piled earth upon plaintiff's land, burying his fence and covering about an acre of land. After the commencement of an action for damages, a survey and map were made and filed, and the required notice was served. Held, that plaintiffs were entitled to damages for the injury to the fence, and for such injury to the land as accrued prior to the filing of the survey and map and service of the notice, but not for any permanent injury in cutting off access to the towpath, or for any intrinsic value of the land itself, as the state alone would be amenable for such damages.

Appeal from trial term, Onondaga county.

Action by Edward A. Van Alstine and others against Alvin J. Belden and another. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

Plaintiffs, as tenants in common, owned a farm in the town of Camillus, in the county of Onondaga, bordering on the Erie Canal for a distance of 2,039 4/10 feet. The defendants in the latter part of 1896 and early part of 1897 were engaged in deepening and widening the canal, under the act appropriating $9,000,000 for that purpose. Their contract covered about 6 miles, and included the portion adjacent to the farm of the plaintiffs. In the prosecution of their work, the defendants piled up earth on the land of plaintiffs, and partially covered over and buried the fence that was their boundary line, extending entirely across the farm. About an acre of land was so taken. No survey was made nor map filed on behalf of the state for the appropriation of this land until long after the trespass of defendants, and until after this action was commenced. This action is for trespass,—for damages sustained in destroying the fence and injuring the land.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Leonard C. Crouch, for appellants.
G. W. Driscoll, for respondents.

SPRING, J. The early acts of the legislature giving the canal commissioners of the state authority to take and appropriate any lands necessary for the construction and improvement of the canals made no provision as to the manner in which possession should be taken or title acquired. Laws 1817, p. 302, § 3; Rev. St. (8th Ed.) pt. 1, c. 9, tit. 9, § 16. By section 1, c. 352, of the Laws of 1849, it was enacted that when any tract was to be "divided" by the "location or enlargement" of any of the canals, and either portion was required—

"The canal commissioners shall cause a survey and map of such portion of such land to be filed in the office of the clerk of the county where such land is situated, and thereupon the title to such portion of land shall vest in the state, in same manner as other land taken by the state for the construction of the canal."

By chapter 336 of the Laws of 1884 the following was provided:

"In the construction or improvement hereafter of any canal or feeder, where-by the superintendent of public works, or other authorized agent of the state shall appropriate private lands, streams or waters, the said superintendent of public works, or other authorized agent of the state, shall serve upon the owner, owners, or occupants of said lands, streams or waters a written or printed notice of such appropriation, duly signed by him, which notice shall contain an apt and sufficient description of the lands, streams or waters so appropriated."

And this act was amended by the Laws of 1888 (chapter 118), by providing that a duplicate of this notice, with the affidavit of service attached, was to be recorded in the office of the clerk of the county where the land was situate.

Section 70 of the canal law, enacted in 1894, provides:

"The superintendent of public works may enter on, take possession of and use any lands, structures and waters, the appropriation of which for the use of the canals and the works connected therewith, and for the execution and completion of any repairs or improvements, directed by the canal board or legislature to be made, shall in his judgment be necessary. An accurate survey and map of all such lands shall be made by the state engineer and certified by him to be correct, and the superintendent of public works shall endorse thereon, or annex thereto, a certificate stating that the lands described therein have been appropriated for the use of the canals of the state, and such map, survey and certificate shall be filed in the office of the state engineer. The superintendent of public works shall thereupon serve upon the owner of any real property so appropriated, a notice of the filing and the date of filing of such map and survey, and specifically describing that portion of such real property belonging to such owner, which has been so appropriated, and from the time of such service, the entry upon and appropriation by the state of the real property described in such notice, for the uses and purposes of the canals, shall be deemed complete, and such notice shall be conclusive evidence of such entry and appropriation, and of the quantity and boundaries of the land appropriated."

This brief epitome of two or three of the several enactments relating to the accession of lands for canal purposes shows the trend of the legislature has been to place in definite, systematic shape the method to be pursued in making the appropriation. In the first place, the power was vested in the canal commissioners, without any restriction as to the form in which they exercised that power. Their ipse dixit seemed to be all that was essential. Later, in the development of the method of acquiring these lands, the legislature required the making of a survey and the filing of a map of the lands to be appropriated, and the service of a notice containing a description of them upon the owner or occupant, as a prerequisite to the appropriation of the lands. This method relieved the state from liability arising from the acts of irresponsible contractors and assumed agents, and assured the owner the state was to award compensation for the lands taken. The drift of this legislation is to fix liability upon the state when these preliminaries have been accomplished. Hayden v. State, 132 N. Y. 533, 30 N. E. 961; Yaw v. State, 127 N. Y. 190, 27 N. E. 829; City of Syracuse v. Stacey, 86 Hun, 441, 33 N. Y. Supp. 929; Waller v. State, 144 N. Y. 579, 39 N. E. 680; In re St. Lawrence & A. R. Co., 133 N. Y. 270, 31 N. E. 218.

The defendants began piling dirt upon the plaintiffs' property in December, 1896, and prosecuted this work until some time in May following. No survey was made, no map filed, and no notice served upon plaintiffs on behalf of the state, until after the completion of this work, and until after the defendants had been sued in this action. Clearly, the defendants are liable. The plaintiffs could not hold the state, as it had not assumed to act in the way the statute explicitly provided. It is urged, however, that when the state took possession its title related back to the assumption of possession by the defendants, and that the plaintiffs, not being the owners of the lands appropriated at the time of the trial, cannot recover. The state took the land as it was when it served its notice. If the defendants had destroyed a building or stripped off the land in widening the canal, the state would not pay for those damages, because they were not committed after its appropriation. The learned trial judge was very careful to limit the liability of the defendants to the damages directly following from the piling of the dirt preceding the action of the state, and to the injury to the fence, and stated that no damages were to be charged to them for any permanent injury in cutting off their access to the towpath of the canal, or for any intrinsic value to the land itself, as the state alone was amenable for those damages.

The judgment and order are affirmed, with costs to the respondents. All concur.