WEEKS-THORNE PAPER CO. v. CITY OF SYRACUSE et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

1. EMINENT DOMAIN (§ 319*)—LAKES—APPROPRIATION BY STATE—RIGHTS OF RIPARIAN OWNERS.

Appropriation by the state of the waters of Skaneateles Lake to feed the Erie Canal, did not oust the riparian landowners on the outlet of the lake of their right to use the water.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 847–850; Dec. Dig. § 319.*]

2. EMINENT DOMAIN (§ 318*)—CONDEMNATION PROCEEDINGS—EFFECT.

By Laws 1889, c. 291, as amended by Laws 1890, c. 314, the Syracuse water department was granted permission to draw water from Skaneateles Lake through a 30-inch main, but before doing so was required to acquire and extinguish all water power rights on the outlet of the lake to be affected. Pursuant to such act, proceedings were instituted to condemn the water rights of plaintiff's predecessor on the outlet of the lake, and a judgment entered from which no appeal was taken fixing the damages for the rights of plaintiff's predecessor at $22,000, and providing subject to the rights of the state to use the water to supply the Erie Canal, that the city should be entitled to divert therefrom at all times so much of the water as might be necessary to supply the city and its inhabitants with water. *Held*, that the rights of plaintiff's predecessor in the water were extinguished for all time by such judgment so far as the right thereto by the city was concerned, and was not limited to such damages only as were occasioned by the withdrawal from the lake of so much water as would flow through a 30-inch main.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 841–846; Dec. Dig. § 318.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. APPEAL AND ERROR (§ 1180*)—REVERSAL—BENEFIT.
    Reversal of a judgment does not inure to the benefit of one not a party
to the appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4631;
Dec. Dig. § 1180.*]

4. EMINENT DOMAIN (§ 243*)—CONCLUSIVENESS—ESTOPPEL TO ATTACK.
    Where a condemnation decree awarded plaintiff's predecessor a certain
sum as damages for the condemnation of its water rights on the outlet of
a lake, and the award was accepted and retained, plaintiff was thereafter
estopped while retaining the award to challenge the adequacy of the peti-
tion to confer jurisdiction of the subject-matter.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 627–
629; Dec. Dig. § 243.*]

Appeal from Equity Term, Onondaga County.

Action by Weeks-Thorne Paper Company against the City of Syra-
cuse and others. Judgment for defendants, and plaintiff appeals.
Affirmed.

Argued before SPRING, WILLIAMS, KRUSE, and ROBSON,
JJ.

George Barrow, for appellant.
Walter W. Magee, Corp. Counsel, for respondents.

SPRING, J.   Skaneateles Lake is a body of fresh water about 15
miles long with a surface area of 13¼ miles and a watershed of 73
miles, and is distant southeasterly from Syracuse about 17 miles, and
its altitude is considerably above that city. Its outlet flows northerly
discharging itself into Seneca river 10 miles from the lake. Along the
banks of the outlet several mills are located, among them that of the
plaintiff corporation, succeeding in title and interest to the Hartlot
Paper Company, and which has been carrying on the business of
manufacturing paper with water power derived from said outlet. In
1843 the state of New York, through its canal board and canal com-
missioner, appropriated the waters of said lake flowing through said
outlet and ever since has used the same as a water supply for the Erie
Canal during the seven months of navigation. The quantity taken
daily during that period on the average has been about 71,000,000
gallons, all running through the outlet. During the five months' sea-
son of closed navigation the quantity of water discharged from the lake
has averaged about 48,000,000 gallons per day, and the entire available
water supply of the lake on a daily average has been about 61,000,000
gallons. The quantity allowed to flow through the outlet has at all
times been regulated by the state gatetender representing the officers
or board in charge of the Erie Canal. The appropriation of the water
of the lake by the state did not oust the riparian millowners of their
right in the water (Waller v. State of New York, 144 N. Y. 579, 39
N. E. 680); and generally the use by the state did not operate to the
detriment of these millowners. The water all flowed through its
natural channel and was available to those entitled to it.

By chapter 291, Laws 1889, the water department of the city of
Syracuse was provided for, and permission granted to take the water
of the lake to that city as a water supply for its inhabitants. The act

was amended by chapter 314, Laws 1890. Section 1, subd. 18 of the amended act, provided:

"The Syracuse water board is hereby authorized, under the restrictions and conditions hereinafter mentioned to take and conduct water not required for the Erie Canal, from Skaneateles Lake, to said city, through a pipe or main not exceeding thirty inches in diameter, for the purpose of supplying said city and its inhabitants with water. Before any water shall be so taken, however, the water board shall, at the cost and expense of said city, increase the storage capacity of said lake sufficiently to store therein all the ordinary flow of its watershed."

And, further:

"Before any water shall be taken from Skaneateles Lake under the provisions of this act, the city of Syracuse shall acquire or extinguish all waterpower rights upon the outlet of said lake to be affected by the proposed storage of water."

In pursuance of this authority vested in it by the Legislature, in November, 1892, the city of Syracuse by petition to the Supreme Court commenced proceedings to acquire by condemnation the interest of the riparian owners along said outlet for the purpose of supplying said city with water. The Hartlot Paper Company, the predecessor of the plaintiff, was a defendant in said proceeding, and answered therein. Judgment of condemnation was finally entered in said proceeding extinguishing the title of said Hartlot Paper Company and vesting the same in the city for the purposes mentioned, subject, however, to the paramount rights of the state in and to said water. The said Hartlot Paper Company was awarded the sum of $22,000 for the value of its property right in and to said water, and said sum was paid and accepted by said company, and no appeal from the judgment entered was ever taken by said company, and its right to appeal expired long prior to the commencement of this action. The storage capacity of the lake was increased by the city in compliance with the direction contained in the amended act. The judgment of condemnation and the order appointing the appraisers, granted January 23, 1893, provided, among other things, as follows:

"That, upon making compensation therefor, the city of Syracuse is entitled in this proceeding, as against the defendants and every of them, to condemn and acquire the right to increase the storage capacity of Skaneateles Lake sufficiently to retain therein all the ordinary flow from the watershed, and to at all times store and retain therein so much thereof as shall not be required for the Erie Canal; and subject to the rights of the state to use the same for the supply of the Erie Canal, to divert therefrom at all times so much thereof as may be necessary to supply the city of Syracuse and its inhabitants with water."

The report of the commissioners contained the following:

"The foregoing awards of compensation are based upon an appropriation by the city of Syracuse of all the water rights of the several claimants of, in, and to the waters of Skaneateles Lake and its watershed, with the right to store in said lake and to divert therefrom, as may at any time be authorized by law, so much of the waters of said lake and its watershed as shall not be required by the state of New York for the Erie Canal, and upon the depreciation in value of the several properties described in the petition and judgment in this proceeding, and embrace the compensation which ought justly to be made by the city of Syracuse to the several claimants herein"—

and the final order of confirmation was to the like effect.

It seems to be palpable, therefore, that the rights of the Hartlot Paper Company in this water was by this judgment extinguished for all time so far as the right thereto by the city was concerned. The act only provided for so much water as could be taken through a pipe 30 inches in diameter. The city was growing rapidly and increasing in population, and the assumption was reasonable that the one pipe in time would become inadequate for the needs of the city and its inhabitants. The board of water commissioners evidently deemed it unwise to require a new action against these millowners whenever an addition to the carrying capacity of the water line to the city was made necessary and permitted by the Legislature. Accordingly by the judgment, following in effect the language of the petition, the city condemned and acquired the right to divert at all times whatever water was necessary to supply it and its inhabitants. The awards of compensation were made upon the expectation of increasing the water supply to the city, and the commissioners were careful so to state in their report. The conclusion, consequently, is irresistible that the award of $22,000 to the Hartlot Paper Company was intended in payment for the extinguishment of its right to the water for all time in favor of the city.

To be sure the right of the city in this water is subordinate to that of the state for canal purposes. No one has ever challenged that proposition, and the judgment distinctly recognizes its verity. Also, when the water is flowing through the outlet for the use of the state the plaintiff and the other riparian owners may avail themselves of it, but the water which flows through the outlet is to supply the Erie canal, not the plaintiff or the other millowners. The use by the owners is entirely a matter between the state and them. The state may possibly deprive the city of the use of the water, thus rendering its investment of little value and the plaintiff may profit thereby. Again, its benefit would result not because of any right the plaintiff has in the water as against the city, but because it is the incidental beneficiary of the user by the state. If the state should abandon the canal or permit the city of Syracuse to use all the water which is impounded within the lake area and such use was necessary, the plaintiff would have no cause of action against the city. The controversy of its predecessor in title with the city was ended for all time by a judgment in which such predecessor acquiesced by accepting and retaining the sum awarded, and the plaintiff does not now offer to return that sum or repudiate the judgment.

It was claimed by the defendants in the condemnation action that the petition did not describe the property to be taken with sufficient definiteness. An appeal was taken from the judgment to the General Term of the Supreme Court by some of the defendants, and a reversal was had upon that ground. City of Syracuse v. Stacey, 86 Hun, 441, 33 N. Y. Supp. 929. The petition was subsequently amended, new and larger awards were made, and another judgment entered, which was affirmed. 45 App. Div. 249, 61 N. Y. Supp. 165, and 169 N. Y. 231, 62 N. E. 354. The judgment of condemnation condemned all the water rights of the defendants upon the outlet of the lake, and also contained this clause:

"The right to divert and withdraw from said lake, and the waters to be stored therein, such and so much water as from time to time the users of said city and its inhabitants may require, and as may be lawfully taken therefor."

The Hartlot Paper Company was not a party to the appeal, and the reversal did not inure to the advantage of the plaintiff. St. John v. Andrews Inst., 192 N. Y. 382, 386, 389, 85 N. E. 143.

The chief contention of the appellant is that the petition did not state facts sufficient to confer jurisdiction, and the specific defect urged is the omission of the petition to set forth accurately the property sought to be condemned. The Supreme Court certainly had jurisdiction to entertain a proceeding of this kind, and the petition was adequate to confer authority over the subject-matter, as well as of the person of the defendants. The question is of no importance now, for the court assumed jurisdiction, disposed of the rights of the parties to the action, and the Hartlot Paper Company cannot recognize the validity of the judgment by accepting the money awarded it, and, while retaining it through its successor in interest, challenge the adequacy of the petition. Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. 1068; Sherman v. McKeon, 38 N. Y. 266, 274, et seq.; City of Buffalo v. Balcom et al., 134 N. Y. 532, 536, 32 N. E. 7. As was said in Sherman v. McKeon, supra, 38 N. Y., at page 275:

"The receipt of the money operates as an estoppel, and the damages paid have the same effect as a conveyance, and vest the title in the corporation."

By chapter 631, Laws 1906, the city was empowered to add to its water supply from the lake, and it is now laying another conduit 30 inches in diameter to the city, which will double the carrying capacity. The original line was capable of delivering to the city at full head 15,000,000 gallons of water daily, and a further depletion of the water may interfere materially with the value and efficiency of the water privilege of the plaintiff. If the award and judgment had been solely for the damages arising from the diversion of the 15,000,000 gallons daily, there would be much force in the position of the plaintiff. As the judgment and the compensation paid covered the damages for all the water which might for all time be diverted, the plaintiff is estopped from recovering in this action or obtaining the injunction asked for.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.