(Supreme Court, Appellate Division, Fourth Department.　February 3, 1899.)

1. MUNICIPAL CORPORATIONS—PROCEEDINGS TO OPEN STREET—NOTICE.
　　Syracuse City Charter, § 167, provides that notice shall be given of the application for the appointment of commissioners to ascertain and report the compensation to be paid to persons owning or having an interest in property proposed to be taken for a street and shown to be benefited. Held, that notice to a mortgagee of a railroad might be dispensed with in a proceeding to take railroad property, where the mortgage is so insignificant in proportion to the value of the road that the lien will not be impaired in the slightest degree by the proceeding.

2. SAME—STATUTES—PARTIAL INVALIDITY.
　　The fact that said section does not provide, in express terms, that notice shall be given to the owners of property taken and not benefited. does not permit the city to take lands without due process of law, as against owners of lands benefited.

Appeal from Onondaga county court.

In a proceeding by the city of Syracuse for the appointment of commissioners to ascertain and report the compensation to be paid to owners of property taken in the opening of Oneida street, the Syracuse, Binghamton & New York Railroad Company filed objections. From an order dismissing the proceeding (49 N. Y. Supp. 828), the city appeals. Reversed.

July 6, 1897, the common council of the city of Syracuse, pursuant to section 166 of the charter of that city, adopted, by a two-thirds vote of the members of said council, a resolution, which was duly approved by the mayor. July 12, 1897, directing the chief engineer of the city to make a survey and map of a proposed extension of Oneida street from its southern terminus to the northern line of Tallman street. July 12, 1897, the city engineer reported that he had made a survey of the proposed extension, and marked its boundaries on the ground by monuments, and presented a map of such proposed extension, showing the land to be taken, from whom to be taken, and the lands which would be benefited by the extension of the street; which map was approved July 12, 1897, by the common council, and was filed July 12, 1897, in the office of the clerk of the city of Syracuse, and in the office of the clerk of the county of Onondaga. Thereupon, July 12, 1897, said common council adopted resolutions declaring its intention to extend said street from its southern terminus to the northern line of Tallman street, and particularly described the land to be acquired for that purpose, and also the land which, in its judgment, would be benefited by the proposed improvement, which included the land of the Syracuse, Binghamton & New York Railroad Company, and that it would apply to the county court of the county of Onondaga, at a term to be held August 27, 1897, for the appointment of three commissioners to ascertain and report the just compensation to be paid to the person or persons owning or having an interest in the property proposed to be taken, as provided by section 167 of the charter of said city; which resolutions were passed by calling the ayes and nays, 16 of the 19 members of the common council voting in favor of the resolutions. These resolutions were duly approved by the mayor of said city, July 15, 1897. July 29, 1897, a copy of the resolutions of July 12, 1897, was duly mailed to the persons interested in the property proposed to be taken, and which was affected by said extension, and, among them, to the Syracuse, Binghamton & New York Railroad Company, and was published at least five times, in five successive numbers (Sundays and legal holidays excepted), in the two official newspapers of said city, being first so published July 29, 1897. August 27, 1897, the city, by its attorney, and the Syracuse, Binghamton & New York Railroad Company, by its attorney,

appeared before the county court, the attorney for the railroad appearing specially, and the proceedings were by consent adjourned until September 18, 1897, when the attorneys for the respective parties again appeared, and the proceedings were adjourned until October 20, 1897, on which date the railroad company appeared specially, and filed the following objections to the proceedings: "First. That, at the time of the commencement of said proceedings, there were two mortgages on record in the Onondaga county clerk's office covering a portion of the property owned by the said Syracuse, Binghamton & New York Railroad Company, which portion was included in the property proposed to be taken by said city in these proceedings, which fact was shown by the affidavit of Peter B. Cole, presented to said court by said Jenney at the time; and that the owners of record of said mortgages had not been served with notice of the application in the above-entitled matter. Second. That there was no proper evidence that the map referred to in said notice had been filed in accordance with the provisions of section 166 of the revised charter of said city, in the Onondaga county clerk's office and in the city clerk's office of the city of Syracuse. Third. That there was no evidence that monuments had been placed, as required by said section of the charter, indicating the lines of said street. Fourth. That the ayes and nays had not been called on the passage of the resolutions of the common council, as required by the city charter. Fifth. That the provisions of the city charter under which said proceedings were instituted are unconstitutional, because section 167 of the revised charter of the city of Syracuse does not provide for notice to the person whose land is to be taken, but permits the taking of such land by the city without due process of law." Thereafter the proceedings were adjourned from time to time, until March 18, 1898, when they were dismissed, and from the order entered the city appeals.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Levi S. Chapman, for appellant.

W. S. Jenney, for respondent.

FOLLETT, J. In respect to the first objection, it is stated in an affidavit, verified October 20, 1897, that the affiant has examined the records in the office of the clerk of the county of Onondaga, and that it appears from those records that October 18, 1856, the Syracuse & Southern Railroad Company mortgaged its road, extending from Syracuse to Binghamton, to trustees, to secure the payment of $1,400,000, and that there appears to be due on that mortgage $2,750; also that it appears by said records that May 29, 1867, the Syracuse, Binghamton & New York Railroad Company mortgaged its said road to secure the payment of $600,000, upon which mortgage there appears to be due $5,000. It is further stated that Percy R. Pyne has been substituted as trustee under both mortgages in the place of the original trustees, and the contention is that these proceedings are invalid, because no notice of the application was mailed to or served on him.

Without considering whether Percy R. Pyne is an "owner," within section 167 of the charter, I think this objection is disposed of by the maxim, "De minimis non curat lex." Assuming that there is a liability of $7,750 existing under the two mortgages, the sum is so insignificant in proportion to the value of the railroad, consisting of 81 miles of single track, extending from Syracuse to Binghamton, that it may well be disregarded in this proceeding; as it is apparent that the security, if a lien exists, will not be impaired in the slightest degree by the extension of the street. Courts are not bound to a

strictness in the construction of the application of statutes which is harsh and pedantic. The Reward, 2 Dod. 269; White v. Beard, 2 Curt. Ecc. 480, 492. Such a construction is allowed only for the protection of a substantial right threatened with invasion. The first objection is untenable.

The second objection is not sustained by the record, for it appears that a map of the proposed extension was made by the city engineer, and duly filed July 12, 1897, in the offices of the clerk of the city and of the clerk of the county of Onondaga.

The third objection is untenable, for it appears, by the undisputed evidence contained in the record, that, when the proposed extension was surveyed, monuments were placed on the ground showing the location of the extension.

In respect to the fourth objection, it appears that the resolution of July 6, 1897, was adopted by a two-thirds vote of the common council, but that the ayes and nays were not called; and it also appears that the resolutions of July 12, 1897, were adopted by the affirmative votes of 16 of the 19 members of the common council upon a call of the ayes and nays. Section 29 of the charter provides: "The ayes and nays shall be called and recorded on all motions and resolutions authorizing the expenditure or collection of money or the making of local improvements or repairs." The resolution of July 6, 1897, neither authorized the expenditure or collection of money, nor the making of a local improvement, but simply authorized the engineer of the city to make a survey and map of the proposed extension of the street, and the question whether it should be extended was left until the coming in of his survey and map; and afterwards, July 12, 1897, the resolutions directing the extension of the street were adopted upon a call of the ayes and nays. Is section 167 of the charter unconstitutional, in so far as it relates to these proceedings? The section provides for notice of the application for the appointment of commissioners to ascertain and report the just compensation to be paid to persons owning or having an interest in the property proposed to be taken and shown to be benefited by the map adopted and filed; but the section does not, in express terms, provide that notice shall be given to the owners of property taken, but not benefited. If the provision of the section which relates to the opening of streets upon lands taken, but not benefited, be unconstitutional, it does not render the portion of the section unconstitutional which relates to a proceeding for the opening of a street through lands all of which are deemed by the common council to be benefited, and which are described as benefited on the map adopted and filed and in the resolutions; for it is well settled that, in case two provisions are contained in a statute, one of which is unconstitutional, such unconstitutional provision will not vitiate the other provision, provided it can be carried into effect without the aid of the unconstitutional provision. People v. Kenney, 96 N. Y. 294; Bridge Co. v. Smith, 148 N. Y. 540, 42 N. E. 1088. The proceedings at bar affect only lands which are to be benefited by the proposed opening, as is shown by the map and resolutions. The section provides that the resolutions shall designate the time when, and the

place where, application will be made for the appointment of com-
missioners, and that a copy of the resolutions, containing a notice
of the time and place when application will be made, shall be pub-
lished in the two official papers of the city, and served personally or
by mail upon the persons benefited, at least 10 days before the time
designated for making the application, which provisions were strict-
ly complied with in this proceeding. The publication was duly made,
and a notice was duly and personally served July 29, 1897, on the
railroad, that the application would be made August 27, 1897. I am
unable to see that any substantial legal defect in these proceedings
is pointed out by the counsel for the railroad. Mere technical ob-
jections interposed by railroads to the opening of new streets and
highways over their lines, because it will involve some expense on
their part, are not favored by the courts, for the reason that rail-
roads hold their lands subject to the interest of the public; and such
corporations are largely interested in the growth of cities and
villages on their lines, for it increases their revenues, and cities and
villages cannot grow without opening new streets and avenues.

The order should be reversed, with costs. All concur.