Michael W. Duskas, J.
Motions have been filed by each of the parties to this special proceeding through which plaintiff seeks to condemn a portion of the property of defendant utility corporation situated in the township of Massena. Plaintiff intends thereby to create a municipally owned electric power utility.
The court finds that the following facts are pertinent to its determination of the several issues considered upon these motions:
Plaintiff filed with the court on March 14, 1975, a petition with notice seeking judgment of condemnation. Pursuant to the statutory provisions under which this proceeding was commenced,[1] the Public Service Commission conducted pro *81 ceedings and filed its certification on December 5, 1975;[2] and on that date the court directed defendant to serve and file its answer to the petition, or alternatively, directed the parties to serve and file motions, by January 6, 1976. Upon application by defendant the court extended the time to answer or appear until a Special Term of the court held on February 17, 1976.
Plaintiff filed on January 15, 1976, an amended petition, together with a motion seeking judgment granting plaintiff temporary possession of the property sought to be condemned. The amended petition was filed and served upon defendant before the latter party served and filed a motion (made returnable before the court at Special Term, February 17, 1976) asking for judgment dismissing the petition, i.e. the instrument filed March 14, 1975. Subsequent to hearing oral argument by respective counsel at Special Term the court granted leave to defendant to reply to plaintiffs motion for judgment upon the amended petition. Defendant filed its reply on March 9, 1976, pursuant to the directions of the court, and thereafter the court from time to time received and accepted from counsel for each party additional memoranda pertaining to the pending motions, whereupon the court on March 29, 1976, deemed that the motions had been finally submitted and were ready for determination.
Defendant asserts that the first petition is jurisdictionally defective in that it insufficiently describes the property to be condemned (Condemnation Law, § 4, subd 2); that this petition and the amended petition are jurisdictionally defective because plaintiff failed to include a necessary party, Marine Midland Bank-New York, as a defendant therein (Condemnation Law, § 4, subd 4); that by reason of the jurisdictional defects contained in the former petition the court is without authority to recognize or accept the amended petition; and finally, contends that the property described in the amended petition and which plaintiff seeks to condemn differs substantially from that set forth in the original petition. Defendant also opposes the application by plaintiff for temporary possession.
Plaintiff denies that the petition filed March 14, 1975, is jurisdictionally defective and contends that if there should be found some defect therein, the amended petition filed January *82 15, 1976, cures the defect. Plaintiff further asserts that it served and filed the amended petition as a matter of right, or alternatively, that this court can allow the filing thereof where it is determined that leave of the court is required to amend the pleading; and also, denies that the Marine Midland Bank — New York is a necessary party defendant. Plaintiff maintains that its possession of the subject property during the pendency of these proceedings is necessary in order to effect, the municipal operation of the electric utility.
Upon the facts and proceedings set forth above, the court continues with its findings, namely:
I
Paragraph "4.” of the (original) petition describes the property to be condemned by referring to "Schedule A”, a document which is annexed to the petition. "Schedule A” is an inventory of certain property of defendant and was prepared at defendant’s order by the Stone & Webster Appraisal Corporation. Plaintiff’s copy of this instrument was provided by the defendant. The mentioned paragraph of the petition also lists items the plaintiff did not choose to acquire by condemnation, but which were contained in "Schedule A”.
An examination of the schedule, disregarding the items excluded by the petition, discloses that the instrument contains extensive lists of property and property rights, including transmission towers, poles, conductors, fixtures, and other devices and equipment; also, parcels of real estate, easements, and permits. The real property items set forth the location, dimensions, and approximate acreage of the parcels, and references are made to "NMPC Document Numbers” and deeds by dates of execution. Easements and permits recited therein refer only to "NMPC Doc. Nos. shown in a volume of supplemental details”.[3] Plaintiff did not file the indicated separate or supplemental volume, although it had possession thereof at the time, but instead annexed the instrument to its amended petition.[4] It is undisputed that the parties, and the *83 Public Service Commission, had recourse to the document (n 4) during the negotiations and proceedings preceding the filing of the first petition herein as well as subsequent thereto. Annexed to plaintiffs amended petition (in addition to "schedule B”, n 4) are two exhibits, i.e. a map of the Town of Massena, and second, a map depicting defendant’s transmission and distribution system within the township.
II
The Marine Midland Bank — New York is designated as the trustee under mortgage indenture agreements entered into by the defendant and the bank under which indentures the payment of general mortgage bonds issued by the defendant is secured by the lien of a mortgage trust indenture,[5] together with subsequent supplemental and amended indentures, against the property of defendant. The property situated in the Town of Massena which plaintiff seeks by these proceedings to condemn comprises a portion of the security under the lien. The defendant has secured over $1,100,000,000. in general mortgage bonds through these recorded indentures covering properties of the defendant.
Plaintiff has not included the aforesaid trustee as a party to these special proceedings.
Ill
Plaintiff seeks temporary possession of the property it is condemning by these proceedings and has offered to this court to post payment, in trust, of a sum (not to exceed $3,750,000) from which defendant may be recompensed for damages the latter party sustains by reason of plaintiffs use of the property, or incurs because these proceedings are in some manner terminated to the end that defendant resumes possession. The parties agree that defendant is presently providing adequate electric service to its consumers within the township and that there exists no foreseeable condition or circumstance due to which the defendant will be unable to provide electric power to consumers within the municipality.
Although plaintiff maintains that the proposed municipally owned utility will provide consumers with electric service at lower rates than presently charged by defendant, the court can make no finding herein upon this contention, and there *84 fore, its conclusion in regard to the application for temporary possession must rest upon findings which exclude the plaintiffs professed premise.
CONCLUSIONS
Defendant maintains that the petitions filed herein are insufficient to a degree that the court lacks jurisdiction to entertain this special proceeding (CPLR 3211, subd [a], pars 2, 10). The standards which courts should apply in determining issues pertaining to the sufficiency of a condemnation petition are found in Matter of Water Comrs. of Amsterdam (96 NY 351), wherein the Court of Appeals stated that a petition must be drafted with such specificity that there is no uncertainty regarding the description of the property, nor the degree of interest, sought to be acquired. (Id., at p 361.) The court also held therein that statutes authorizing the taking of property for public use must be strictly construed. (Id., at pp 357-358.)
An examination of the petitions filed in this proceeding shows that plaintiff intends to acquire by condemnation of defendant’s property whatever right and title the latter party possesses therein. It is inferentially clear that plaintiff has no purpose other than to create a municipal electric utility, and to that end the plaintiff is desirous of obtaining the interest held by defendant in every item of such property. There is nothing contained in the petitions which may give rise to some issue regarding the extent or degree of interest the plaintiff is attempting to acquire.[6]
The primary issue is whether the original petition, together with "Schedule A” annexed, upon which plaintiff moves for judgment of condemnation, sufficiently describes the property to be condemned, and if not, does the amended petition correct the defects? Also, is plaintiff permitted to file an amended petition in such event?
There is perhaps a paucity of legal precedence regarding these questions. The Court of Appeals held that a defective description contained in a petition in eminent domain proceedings is not cured by a reference to a deed. (Matter of New York Cent. & Hudson Riv. R. R. Co., 70 NY 191.) The court *85 further stated that even where the deed referred to in the petition remedied the inaccurate description the proceedings would not be in compliance with the statute (referring to S L 1850, ch 140, § 14, the "General Railroad Act”), since the statute required that the petition contain a description of the premises. (Id., at p 194.) The petition in the cited case contained a metes and bounds description of the subject premises followed by a reference to a recorded deed. Unlike the references in "Schedule A” herein, however, such reference was to a recorded deed covering premises owned by the condemnor, and thus, not to a deed which fully incorporated the premises to be condemned. The reference was made for the purpose of discerning the several points of intersection contained in the petition’s metes and bounds description. The Court of Appeals found that the property could not be accurately depicted even when the reference deed was utilized. Comparing the facts therein to those found in the instant case, a materially dissimilar situation is apparent. The first petition in the present proceeding contains no error with regard to the subject property, but references to other instruments are made therein solely for a more complete description of the property; and thus, the issue presented may be stated to be whether the description set forth in the petition and "Schedule A” is sufficient, or does it lack reasonable certainty.
A factual situation resembling that found in the present proceeding appears in City of Plattsburgh v Kellogg (254 App Div 455). The condemnor’s petition therein described the premises by general location at the mouth of a river, termed the properties "Upper Island” and "Lower Island”, and set forth the acreage of each island; also, a third parcel described as the "Delaney Coal or Wood lot”, together with the acreage and general location thereof, was contained in the petition. References to deeds purportedly covering these properties were made in the petition and a map covering the parcels was annexed. The petitioner filed an amended petition containing a further description of the coal or wood lot, and the condemnor also asserted it was acquiring all of the interest the owners held in the "Artificial Peninsula at or near the mouth of the Saranac River, and lying easterly of’ (id., at p 458). Upon finding that it could not be determined whether the condemnor sought to acquire 2.2 acres, or all the lands of the peninsula, and that the maps annexed to the petitions did not resolve the defects, the Third Department concluded that both *86 petitions were fatally defective (id., at pp 458-459). The court held that the property described in a condemnation petition must be accurately set forth to the end that anyone familiar with the locality would be able to readily locate the premises (ibid.).
The inaccuracies of the descriptions contained in the petitions considered in City of Plattsburgh (supra) cannot be equated to the alleged defects in the descriptions set forth in the petition and "Schedule A” herein, for in the present case the property cannot be found to be indeterminable, but instead the petition may be termed incomplete to the extent that a person attempting to locate the subject premises would be caused to examine instruments not fully contained in the petition and annexed schedule. In the latter situation a petition which failed to contain accurate and proper references to descriptive instruments outside the petition would be legally defective. Any failure to identify the location and quantity of the property required, "or any uncertainty in this respect will vitiate the proceedings” (id., at p 457).
The petition of the Town of Massena filed March 14, 1975, together with "Schedule A”, generally describes the property to be acquired and references therein to other instruments are not made to resolve any defects which may be found in the descriptions, but rather are intended to render a complete representation of the subject property. Additionally, such references are to instruments within the possession and knowledge of defendant, and in fact were prepared at defendant’s order for its own use and benefit. Under the particular circumstances of the present proceeding it is difficult to imagine that the defendant was not fully apprised of the specific items of property plaintiff sought to condemn, for the reasons stated, and also, since certain references contained numerical designations assigned by the defendant itself to the property.
Subdivision 2 of section 4 of the Condemnation Law provides that a petition for condemnation shall include "2. A specific description of the property to be condemned, and its location, by metes and bounds, with reasonable certainty.”
A petition, together with 19 schedules (each of which described a defendant’s premises) annexed, did not sufficiently describe the property intended to be taken in City of Syracuse v Stacey (86 Hun 441).[7] The factual situation therein is distin *87 guishable from that of the present case, since the court in City of Syracuse found that the petition lacked specificity regarding the type of property rights to be acquired as well as the extent or degree of such rights (id., at pp 454-456).
Although the court in City of Plattsburgh v Kellogg (254 App Div 455, supra) was not caused to determine the issue whether or not amended petitions may be filed to correct defects found in an original petition in a condemnation proceeding, it would appear that the Third Department recognized that amendment was permissible with leave of the court, if not as a matter of right (id., at p 459). There are of course circumstances or factual situations wherein a court cannot allow an amended petition, nor should the court amend the proceedings through its own order.[8]
The Fourth Department in City of Syracuse v Stacey (supra), found that the amended proceedings failed to correct the defects contained in the petition first filed, and held further that a petitioner may be permitted to amend its proceeding (with leave of the court) to cure a defective description (id., at p 461). The Fourth Department did not move from the holding in City of Syracuse v Stacey (supra), when it dismissed the original and amended petitions and directed that the condemnation proceedings must be initiated anew in Iroquois Gas Corp. v Jurek (30 AD2d 83) for in the latter case the original petition had never been filed, and therefore, there was no proceeding before the court which was subject to reformation. It also appears that the proceedings therein contained contrary averments regarding the petitioner’s authority to condemn as a gas corporation, or a pipeline corporation, there apparently existing under the pertinent statutes materially different powers of condemnation granted these respective corporations.
The amended petition filed by the Town of Massena herein does not impart an abandonment of the proceedings instituted through the first petition, nor is there any material and substantial change contained in the amended proceeding compared to the original petition.[9] The court finds no insufficiency *88 in the original petition which can be deemed a jurisdictional defect under the peculiar facts of this case. The instruments referred to in the petition and "Schedule A” contain metes and bounds descriptions, the defendant was afforded reasonable certainty of the property plaintiff sought to condemn, the interest plaintiff seeks to obtain therein is unquestionable, and the amended petition does not substantially or materially differ from the original petition regarding these matters.
The court concludes that the plaintiff was entitled to serve and file the amended petition herein (CPLR 3025, subd [a]) and that defendant’s motion to dismiss upon the grounds that the instrument is jurisdictionally defective must be denied.
Plaintiff further seeks through the amended petition (par "5A”) leave of this court to further amend the petition as may be deemed necessary to incorporate net additions and deletions to the inventory effected by the defendant during the pendency of these proceedings and since December 3, 1973, the date of the appraisal ("Schedule A”) and compilation of documents ("Schedule B”).
The deficiencies of the condemnation statute were recognized by the court in Iroquois Gas Corp. v Jurek (30 AD2d 83, 85, supra).
The property in the pending special proceeding, comprised in a considerable part of items not truly real property in nature, is currently utilized in the business of providing electric power and service to the defendant’s customers within the Massena township. It is easily evident that additions and deletions will be made by defendant to those items during the course of these proceedings in order that the consumers will be provided adequate and safe service, and it is equally obvious that plaintiff intends to acquire the property for a purpose to which it is being presently utilized. The relief requested by plaintiff has been recognized as a practical necessity with particular regard to public utility condemnation proceedings. (See City of Glen Cove v Utilities and Inds. Corp., 24 AD2d 766, affd 17 NY2d 205.)
The circumstances of the present proceeding lead this court to the conclusion that plaintiff’s application should be granted. (Condemnation Law, § 26; and CPLR 3025, subd [b].)
Defendant maintains that the amended petition describes property to be condemned which cannot be found to have been embraced in the original petition. The court has examined extensively the amended petition, the exhibits and schedule *89 annexed thereto, and has compared the contents thereof with the first petition and "Schedule A”; additionally, an inspection of the reply affidavits and exhibits submitted by defendant was conducted by the court. Counsel for the parties have since Special Term submitted several letters and memoranda pointed to this issue and in support of their respective positions regarding this question, all of which have been considered by the court, and it is the determination of the court that the amended petition does not purport to condemn property, or property rights, substantially or materially different from that contained in the proceeding first initiated.
Defendant asserts in support of its motion for judgment dismissing the petitions herein that plaintiffs failure to include Marine Midland Bank — New York as a party defendant constitutes a jurisdictional defect. (See CPLR 1001, 1003.)
Subdivision 4 of section 4 of the Condemnation Law requires that a petition for condemnation include "4. The names and places of residence of the owners of the property”, and section 2 of such statute defines the term "owner” as being "all persons having any estate, interest, or easement in the property to be taken, or any lien, charge, or incumbrance thereon.”
There is considerable authority holding that a mortgagee of condemned land falls within the term "owner”, and therefore, that such lienholder is a proper and necessary party in an eminent domain proceeding. (Matter of Holman, 268 App Div 330, 331; Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R. R. Co., 249 NY 445, 450; Matter of Municipal Housing Auth. for City of Yonkers v Phipps, 257 App Div 1009; East Riv. Sav. Bank v State of New York, 266 App Div 494, 498; and Howard v Bellinger, 200 Misc 1082.) It is also a well-settled principle that the failure to include a lienholder in such an action does not invalidate the proceedings against the parties named defendants, and that the mortgagee’s interest is secured by the lien being transferred to the condemnation award. (East Riv. Sav. Bank v City of New York, supra; Matter of Holman, supra, pp 332-333; and see also 36 Fordham L Rev, 586-588 and authorities cited at n 10 therein.)
The courts have not applied strict rules of construction when considering these issues, but rather, have examined all the circumstances in the case in order to ensure that these "owners’” interests have not been substantially impaired. In *90 Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R. R. Co. (supra, p 451), the condemnation petition set forth (as required by the statute) that the petitioner and owner of the property were unable to reach an agreement on the price to be paid. The trustee for mortgage bondholders was not a party to these negotiations. The Court of Appeals held that although the trustee was an "owner” of the premises any effort by the petitioner to reach an agreement with the mortgage holder would be futile, since the other owner (The Railroad) had not agreed to any proposed settlement. In a case before the Fourth Department, the court viewed the interests of a mortgagee in the property which was the subject of an eminent domain proceeding to be so minimal in light of the total security and indebtedness that such court dismissed the mortgagee’s objection to the proceedings (no notice of the application was served upon him), terming the interest of the lienor a trivial matter. (Matter of City of Syracuse [Oneida St.], 22 Misc 235, revd 37 App Div 266, 269.)
The property which is the subject of the appropriation herein comprises only a minute portion of the security, and these proceedings have not at this point impaired the interests of such trustee therein. The plaintiff is not barred from serving formal notice of these proceedings upon the bank, as trustee, in light of the fact that the defendant has not served or filed an answer, the commissioners have not been appointed, and the proceedings heretofore held before the Public Service Commission being immaterial to the interests of the lienor.
Upon all of the foregoing the court concludes that the proceedings are not jurisdictionally defective by reason of plaintiff’s failure to include a necessary party, the Marine Midland Bank-New York, herein.
Section 24 of the Condemnation Law provides the court with authority to grant temporary possession of property comprising the subject matter of a condemnation proceeding. Defendant contends that a court may exercise such authority only where an imperilment of the public health and well-being would occur if the granting of possession were deferred. Plaintiff claims that the public interest will be best served by awarding temporary possession to petitioner, i.e., possession will reduce the award due defendant considering inflationary factors, consumers will benefit from anticipated reduction in *91 costs of power,[10] and possession will effect a settling of matters pertaining to deletions and additions to the property.
The grant of temporary possession of property which is the subject of a pending condemnation proceeding has been affirmed by the Court of Appeals upon a finding that the public health and safety will thereby be promoted. (See Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R. R. Co., 249 NY 445, 452-453; and City of Glen Cove v Utilities & Inds. Corp., 17 NY2d 205, supra.) The issue is whether section 24 of the Condemnation Law restricts the grant of temporary possession to those instances wherein the public health will be imperiled by a delay in obtaining possession. This court concludes it does not and finds that the legislative intent was to grant such relief where it would suit the needs of the public. The statute sets forth that the courts may grant temporary possession, "When it appears to the satisfaction of the court at any stage of proceedings that the public interests will be prejudiced by delay”. The statute does not speak of the necessity for proving some pending or potential hazard or imperilment before the court can exercise its authority under this section. In Central New England Ry. Co. v Whittley (159 App Div 468), the court denied the application for temporary possession because the petitioner failed to show any immediate necessity for possession in order to effect the public improvement. (The petition contained affidavits to the effect simply that petitioner required temporary possession in order to perform some work on the premises.) The court did not hold therein that a petition must contain allegations or proof of imperilment to public health and safety - but only that there must be shown circumstances which comprise an immediate necessity for possession. Thus, the court on this motion must determine if a delay in granting possession will materially prejudice the public interest. (Matter of Niagara, Lockport & Ontario Power Co., 111 App Div 686.)
The Second Department held in City of Glen Cove v Utilities & Inds. Corp. (24 AD2d 766, affd 17 NY2d 205, supra) that temporary possession is to be granted, particularly with respect to public utility facilities wherein the Public Service Commission requires the utility to continuously maintain and improve the facilities, when it is shown that the public interests will be prejudiced by a delay. The court included as *92 elements within the term "public interest”, consideration of increased costs, uncertainty to future operation, and proper long-range planning. Defendant argues that although the Court of Appeals affirmed the ruling of the Second Department in this case, the decision of the Court of Appeals was based exclusively upon a finding that there existed an immediate or potential endangerment (lack of water supply for consumption and fire protection) to the public were grant of possession to be delayed. While this court agrees with the interpretation by defendant of the latter decision it cannot accept that party’s conclusion that such determination requires a strict construction of section 24 of the Condemnation Law under which "public interest” is confined to "public endangerment”. In its opinion the Court of Appeals (per Fuld, J.) stated (pp 208-209) "Certainly, this evidence of justifiable concern on the part of the city about its water supply is enough of a showing * * * that 'the public interests will be prejudiced by delay’.” The court found that there had been shown a present or immediate pending danger to the public interest; and in this court’s opinion, the Court of Appeals was, therefore, not caused to look further into the circumstances to determine if other public interests were such that a grant of temporary possession was required.
In the present action the petitioner has shown to this court that the public interest will best be served by granting to it temporary possession of the facilities and property condemned. A prolongation of possession might necessitate the submission of another bond proposition to the residents of the municipality due to inflationary factors, or to added value due to additions and improvements to the property by the defendant at its will or by requirements of lawful authority; also, plaintiff has entered into numerous negotiations and proceedings to acquire power for the proposed municipal system. It is foreseeable that any substantial delay may ultimately result in a loss of that which the plaintiff seeks — a municipally owned electric utility - either by reason of unavailability of power, or an award in excess of the authorized sum; and even without such terminating results the public might expect to incur higher costs for power by reason of further delay in acquiring possession.
The court further concludes, however, that temporary possession must not be granted presently, but application by plaintiff therefor shall be made to the court after the defendant has had an opportunity to serve and file its answer herein.
*93 Accordingly, the motion to dismiss the petition is denied; temporary possession may be awarded plaintiff upon application made as determined hereinabove; and defendant shall serve and file its answer, if any, within eight (8) days of service upon the defendant of the order entered upon these determinations.

. Condemnation Law, §§ 4, 5-a.

. Public Service Commission Opinion No. 75-37: "Opinion and Certification of Earnings, Rate Base and Rate of Return.”

. Stone & Webster Appraisal (per Dec. 3, 1973), "Schedule A” of petition, p 3 (Acct. No. 350), pp 7, 47 (Acct. No. 360).

. Plaintiff filed with its amended petition on January 15, 1976, a "Schedule B”, comprised of six volumes prepared by the Stone & Webster Appraisal Corporation (per Dec. 3, 1973) containing copies of real estate documents and other instruments fully describing the items of property listed in the inventory which plaintiff had designated as "Schedule A”.

. St. Lawrence County Clerk’s office, Liber 243 Mortgages, Page 1 et seq.

. Cf. Matter of Water Comrs. of Amsterdam (96 NY 351); Suffolk County Tel. Co. v Gammon (113 App Div 764); Matter of Long Is. Light. Co. (272 App Div 915); City of Syracuse v Stacey (86 Hun 441); Northwest Quadrant Pure Waters Dist. No. 1 v Payne Beach Assn. (38 AD2d 668); and New York State Elec. & Gas Corp. v Alberti (40 AD2d 890).

. Note that in this case the Fourth Department considered the provisions of *87 section 3360 of the Code of Civil Procedure, which contains the exact wording found in subdivision 2 of section 4 of the Condemnation Law.

. See Matter of New York & West Shore R. R. Co. (89 NY 453) and Matter of Simmons (Catskill Aqueduct) (152 App Div 503).

. Cf. Iroquois Gas Corp. v Jurek (supra).

. See this decision, p 81.